KELLEY, RESPONDENT, *v.* JOHN R. DAILY CO., APPELLANT.

(No. 3,973.)

(Submitted March 24, 1919.   Decided May 10, 1919.)

[181 Pac. 326.]

*Food—Pure Food and Drug Act—Personal Injuries—Complaint —Liability of Seller—Contributory Negligence—Physicians and Surgeons—Expert Testimony—Hypothetical Questions— Excessive Verdicts—Judicial Notice—Pleading—Surplusage.*

Pure Food and Drug Act—Personal Injuries—Right of Action in Consumer.
1.   The duty imposed by the Pure Food Act—a general police regulation—(Chap. 130, Laws 1911) upon the seller of articles of food is one which extends to the public considered as a composite of individuals, and if a consumer sustains some special injury by reason of defendant's violation of the Act, he has a right of action against the latter.

Personal Injuries—Basis of Action.
2.   The duty a breach of which is made the gist of a personal injury action must be one which defendant owed to the plaintiff.

Pure Food and Drug Act—Personal Injuries—Complaint—Duty of Defendant.
3.   A complaint alleging that, at the time of the sale of impure food by defendant to plaintiff, defendant was engaged in selling at retail, to the public generally, meat and meat products for human consumption, was sufficient to bring the case within the statute, and disclose the

---

The question of liability of vendor in case of tort for sale of unwholesome food to consumer is discussed in a note in 21 L. R. A. 140.

On the question of liability of packer or vender of food products to persons not in privity of contract for injuries from defects in articles sold, see notes on the different phases of the question in 19 L. R. A. (n. s.) 923; 48 L. R. A. (n. s.) 213; L. R. A. 1916B, 880.

duty defendant owed to the public, including plaintiff, to see that its food products offered for sale were not adulterated within the meaning of such statute.

Same—Complaint—Breach of Duty.

4. A charge in the complaint above that defendant sold and delivered to plaintiff's husband, for immediate use in his family, including plaintiff, adulterated meat containing "diseased, infected, putrid, decomposed, poisonous acid and animal matter," sufficiently charged defendant with a violation of the Pure Food Act, and with a breach of duty constituting legal negligence.

Same—Seller an Insurer—Guilty Knowledge Immaterial.

5. By Chapter 130, Laws of 1911, the seller of food products is made insurer of their purity, and guilty knowledge on his part is not an ingredient of the offense prohibited; the obligation is personal, and cannot be avoided by showing that the impure food was purchased from a foreign concern and bore the stamp of approval by the government inspectors.

Same—Liability of Seller—Negligence or Warranty Immaterial.

6. Liability under the Pure Food Act arises from a violation of the statute, and it is immaterial whether the foundation of an action based upon such violation is laid in negligence or warranty.

[As to recovery of consequential damages for breach of implied warranty on sale of food, see notes in Ann. Cas. 1913B, 1114; Ann. Cas. 1915C, 143.]

Same—Complaint—Resulting Damage.

7. The allegation in the complaint that as the direct and proximate result of the sale of certain impure food sold to plaintiff by defendant, and her partaking of it, she was made violently ill, to her great damage, *etc.*, sufficiently disclosed the resulting damage.

Same—Complaint—Surplusage.

8. Where the facts stated in a complaint for damages caused by a violation of the pure food law, disclose such violation and the resulting damage, it is sufficient, and the insertion of unnecessary allegations did not render it insufficient.

Same—Complaint—Pleading of Statutes—Judicial Notice.

9. Courts take judicial notice of the general and public domestic statutes; hence plaintiff was not required to specially plead the Pure Food Act in order to recover damages for injuries arising from a violation of it.

Same—Complaint—Guilty Knowledge of Seller—Surplusage.

10. Under the rule set forth in paragraph 5 above, an allegation in the complaint that the defendant knew, or in the exercise of reasonable care should have known, of the impure condition of the food at the time of its sale to plaintiff, was surplusage.

Same—Impurity of Food—Chemical Analysis Unnecessary.

11. While there must be substantial evidence proving, or tending to prove, the causal connection between defendant's negligence in selling, and plaintiff's injury from eating adulterated food, the rule does not require that a chemical analysis of it be made in order to establish its impurity or unwholesomeness.

Same—Contributory Negligence—Defense Available to Defendant.

12. Notwithstanding the statutory liability of the defendant under the Pure Food Act, the defense of plaintiff's contributory negligence in eating it was available to it.

Same—Contributory Negligence—Presumptions.

13. Contributory negligence will not be presumed, but must appear from the evidence of either plaintiff or defendant.

Same—Contributory Negligence—Instructions—Proper Refusal.

14. An offered instruction which predicated contributory negligence on plaintiff's opportunity and failure to examine the impure meat bought from defendant, but ignored circumstances surrounding its purchase, the assurance of defendant that the food was pure, *etc.*, was properly refused.

Same—Damages—Instructions—Harmless Error.

15. Where the jury had been advised that every element essential to a recovery must be established by a preponderance of the evidence, error in an instruction that if they found the issues in favor of plaintiff, they might award damages in such amount as "they believed" would compensate her, *etc.*, was nonprejudicial.

Same—Physicians and Surgeons—Expert Testimony.

16. It was proper for plaintiff's family physician to give his opinion or diagnosis of her illness, based upon his examination and the history of the case as disclosed by plaintiff.

Same.

17. With his patient's consent, a physician may testify to statements made to him by the former, and upon which, in part, he bases his diagnosis and treatment.

Same—Physicians and Surgeons—Hypothetical Questions.

18. A physician to whom a hypothetical question had been propounded in which was recited the history of plaintiff's condition before she ate impure food, and that of her subsequent illness, was properly permitted to give his opinion as to the cause of the illness, as against the objections that the question called for a statement of an ultimate fact determinable by the jury, that part only of the evidence had been incorporated in it, and that the opinion had no evidentiary value.

Same—Attorneys—Misconduct—Error Rendered Harmless.

19. *Held*, that if it was misconduct on the part of plaintiff's counsel to ask questions intended to solicit the information that defendant had previously been prosecuted for a violation of the Pure Food Act, any prejudicial effect was removed by the court's admonition to disregard the fact that the questions had been asked.

Same—New Trial—Excessive Verdicts—Rule.

20. A new trial may be granted on the ground of excessive damages in a personal injury action, only when it appears that the amount awarded is so grossly out of all proportion to the injury sustained as to shock the conscience and indicate that the verdict was prompted by the passion or prejudice of the jury.

Same—What not Excessive Verdict.

21. *Held*, that while a verdict for $10,000 damages for injuries suffered by plaintiff, a woman thirty-seven years of age, from eating impure meat, was very large, it was not so excessive as to warrant the granting of a new trial under the rule above.

*Appeal from District Court, Missoula County; R. Lee McCulloch, Judge.*

ACTION by Lillie M. Kelley against the John R. Daily Company. From a judgment for plaintiff and an order denying its motion for a new trial, defendant appeals. Judgment affirmed.

*Messrs. Murphy & Whitlock* and *Mr. Elmer E. Hershey,* for Appellant, submitted a brief; *Mr. A. N. Whitlock* and *Mr. Hershey* argued the cause orally.

A careful examination of the authorities will disclose that in the so-called food cases there are three theories of liability; first, the theory of implied warranty, which in substance is that any seller of food products for immediate consumption impliedly warrants to any possible consumer, whether he be the vendee or not, that the food is wholesome and suitable to eat; second, the theory of negligence making the vender liable for any negligence in handling or selling such foods, which negligent acts are liable to result in injury to a person consuming the food; and, third, the theory which may, for convenience, be referred to as the deceit theory, and which imposes liability upon the vender, who sells a food product which is unwholesome, though it may not have become so by reason of his act or neglect, who knows at the time of the sale of such unwholesome condition and fails to disclose the same to the purchaser and as a result the purchaser or some third party eats the unwholesome food and is injured. A typical case representing the first theory is that of *Mazetti* v. *Armour & Co.,* 75 Wash. 622, Ann. Cas. 1915C, 140, 48 L. R. A. (n. s.) 213, 135 Pac. 633. The liability of a seller on this theory to a third person other than the vendee has been questioned in a great many cases, upon the ground that there being no privity of contract between the third person and the vender, such third person cannot recover on a warranty not made to him. A very strong recent case supporting this contention is that of *Gearing* v. *Berkson,* 223 Mass. 257, L. R. A. 1916D, 1006, 111 N. E. 785, where recovery is absolutely denied to a ‚third person on the implied warranty theory, the court there concluding that to warrant such recovery, negligence must be shown, and in that case there was not sufficient showing of negligence. This same

conclusion is reached in the following cases: *Nelson* v. *Armour Packing Co.,* 76 Ark. 352, 353, 6 Ann. Cas. 237, 90 S. W. 288; *Crigger* v. *Coca Cola Bottling Co.,* 132 Tenn. 545, Ann. Cas. 1917B, 572, L. R. A. 1916B, 877, 179 S. W. 155.

A typical case illustrating the negligence theory is *Crigger* v. *Coca Cola Bottling Co.,* 132 Tenn. 545, Ann. Cas. 1917B, 572, L. R. A. 1916B, 877, 179 S. W. 155, holding that to impose liability there must be a showing of some negligent act on the part of the defendant in the manufacture, handling or sale of the foodstuff in question. To the same effect, see *Valeri* v. *Pullman Co.,* 218 Fed. 519, and *Gearing* v. *Berkson, supra.*

The third theory is well exemplified in the case of *Berger* v. *Standard Oil Co.,* 126 Ky. 155, 11 L. R. A. (n. s.) 238, 103 S. W. 245. The essential element under this theory is that the vender knew of the unwholesome condition of the food at the time the sale was made. The same principle is illustrated in the following cases: *Heindirk* v. *Louisville Elevator Co.,* 122 Ky. 675, 5 L. R. A. (n. s.) 1103, 92 S. W. 608; *Valeri* v. *Pullman Co.,* 218 Fed. 519; *French* v. *Vining,* 102 Mass. 132, 3 Am. Rep. 440.

Our conclusion is that, under neither of the three theories suggested above, is the complaint sufficient. We believe it was intended to be framed under the second theory. The pleader wholly failed to set out or prove any act of negligence.

The plaintiff's own case established contributory negligence on the part of the plaintiff. The rule is established that such a showing may be taken advantage of by the defendant, regardless of the allegations of the answer. (*Nelson* v. *Boston etc. Min. Co.,* 35 Mont. 223, 88 Pac. 785; *Harrington* v. *Butte, A. & P. Ry. Co.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8.)

"Expert testimony is inadmissible to prove ultimate facts which the jury itself must determine." (*Healer* v. *Inkman,* 94 Kan. 594, 146 Pac. 1172; *Keefe* v. *Armour & Co.,* 258 Ill. 28, Ann. Cas. 1914B, 188, 101 N. E. 252; *Arnold* v. *California Standard P. C. Co.,* 161 Cal. 522, 119 Pac. 913, 914; *Eaton* v. *Southern Pac. Co.,* 22 Cal. App. 461, 134 Pac. 801; *Root* v. *Cudahy Packing Co.,* 88 Kan. 413, 129 Pac. 147, 150; *Dorn* v.

*Clarke-Woodward Drug Co.*, 65 Or. 516, 133 Pac. 351, 353; *Mc-Kay* v. *Seattle Electric Co.*, 76 Wash. 257, 136 Pac. 134, 135.)

Mr. *Harry H. Parsons*, Mr. *Ed. Horsky*, and Mr.ˊ *John G. Brown*, for Respondent, submitted aˌ brief; *Messrs. Parsons* and *Horsky* argued the cause orally.

Plaintiff could recover irrespective of contract. (*Ketterer* v. *Armour & Co.*, 200 Fed. 322; *Mazetti* v. *Armour & Co.*, 75 Wash. 622, Ann. Cas. 1915C, 140, 48 L. R. A. (n. s.) 213, 135 Pac. 633, 636; *Catani* v. *Swift & Co.*, 251 Pa. 52, L. R. A. 1917B, 1272, 95 Atl. 931, 932; *Coca-Cola Co.* v. *J. G. Butler & Sons*, 229 Fed. 224.)                                                      \

Sales of food products affecting the safety of the general public, as they do, have been under particular rules since an early time.   In Year Book 9 Henry VI, 53, there is found an early case laying down the doctrine of implied warranty as to fitness for human consumption.   This doctrine has become fixed in our law. (*Farrell* v. *Manhattan Market Co.*, 198 Mass. 271, 126 Am. St. Rep. 436, 15 Ann. Cas. 1076, 15 L. R. A. (n. s.) 884, 84 N. E. 481.)   Implied warranty is particularly applicable where the seller knows the article is for human consumption and that reliance is placed in the knowledge and skill of the seller as to wholesomeness.   (11 R. C. L., sec. 26; *Farrell* v. *Manhattan Market Co., supra.*)   Implied warranty became so recognized in the law as to be extended to animal foodstuffs and to dangerous articles, as drugs, guns, ₜetc.   Then warranty to immediate purchaser became fixed by statute.   (Rev. Codes, sec. 5115; Kerr's Ency. (Cal.) Codes, sec. 1775.)   Now the law has gone a step further, and, for the protection of the general public, of which plaintiff is one, positively prohibited the sale of foodstuffs for human consumption which are from any cause unfit for that purpose.   (Rev. Codes, secs. 8490, 8491, 8493, 8495, 8496; Laws 1911, 358.)   This court has repeatedly held that a violation of a penal statute is negligence *per se*. ₜ (*Osterholm* v. *Boston etc. Min. Co.*; 40 Mont. 508, 107 Pac. 499; *Neary* v. *Northern Pac. R. Co.*, 41 Mont. 480, 110 Pac. 226.)   "There is

a liability in such cases irrespective of any privity of contract in the sense of immediate contract between the parties." (*Mazetti* v. *Armour & Co., supra; Tomlinson* v. *Armour & Co.,* 75 N. J. L. 748, 19 L. R. A. (n. s.) 923, 70 Atl. 314.)

The complaint states a cause of action upon either the negligence or the implied warranty theory (*Greenwood Cafe* v. *Lovinggood,* 197 Ala. 34, 72 South. 354; *Flessher* v. *Carstens Packing Co.,* 93 Wash. 48, 160 Pac. 14, 16; *Meshbesher* v. *Channellene Oil etc. Co.,* 107 Minn. 104, 131 Am. St. Rep. 441, 119 N. W. 428); or upon the theory of implied warranty. (*Roswel* v. *Vaughn,* Cro. Jac. 196; *Parks* v. *C. C. Yost Pie Co.,* 93 Kan. 334, L. R. A. 1915C, 179, 144 Pac. 202; *Crigger* v. *Coca-Cola Bottling Co.,* 132 Tenn. 545, Ann. Cas. 1917B, 572, L. R. A. 1916B, 877, 179 S. W. 155; *Boyd* v. *Coca-Cola B. Works,* 132 Tenn. 23, 177 S. W. 80; *Jackson Coca-Cola etc. Co.* v. *Chapman,* 106 Miss. 864, 64 South. 791.)

The duty which any person owes in the handling of a dangerous object is, care in proportion to the danger. As applied to injuries to persons from articles sold for human consumption, this was early recognized in the sale of drugs. (*Brown* v. *Marshall,* 47 Mich. 576, 41 Am. Rep. 728, 11 N. W. 392; *Thomas* v. *Winchester,* 6 N. Y. 397, 57 Am. Dec. 455.) These two decisions have formed the basis for multitudinous cases since decided, with reference to drugs. It is but a step to extend this rule to those upon whom the law puts a similar high degree of care, to wit, dealers in food products for human consumption. When, therefore, a complaint sets forth that the man is a dealer in food products and that a purchase was made from him of such character that he knew by purchase and by his previous dealings with the purchaser that it was for immediate home consumption, and that the food so purchased was adulterated and contained poisonous, *etc.,* matter, we think that a cause of action is clearly stated, and that a right of redelivery exists.

An expert may answer the question, even though it was one of the questions which the jury were to determine. (*Western Coal & Min. Co.* v. *Berberich,* 94 Fed. 329, 36 C. C. A. 364;

*Daly* v. *City of Milwaukee,* 103 Wis. 588, 79 N. W. 752; *Little-john* v. *Shaw,* 159 N. Y. 188, 53 N. E. 810; 17 Cyc. 234.)

In such cases as these a cause of action exists, and, involving the safety of the general public as they do, the courts generally are jealous to preserve the cause of action and not allow any excuse in the law for failure to furnish good food. They have gone so far as to expressly hold that the government's stamp of approval is no defense. (*Rinaldi* v. *Mohican Co.,* 171 App. Div. 814, 157 N. Y. Supp. 561; *Catani* v. *Swift Co., supra.*) And certainly it should not be in cases like this, where the food is exposed to dust, flies and filth after the government's stamp is put on it.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Hugh Kelley, the husband of plaintiff, purchased from the defendant six cooked and spiced pigs' feet for food for his family, consisting of himself, his wife and two sons. On the day following the members of the family ate of the meat, and immediately thereafter the husband, the wife and one son became ill. Plaintiff brought this action to recover damages, and prevailed in the lower court. Defendant appealed from the judgment and from an order denying its motion for a new trial.

Counsel for appellant discuss at great length, and with much [1] learning, the several theories under which recovery may be permitted in an action for damages arising from the sale of impure food. It is the contention that this complaint does not state facts sufficient to make out a cause of action under any theory recognized by the law. If we had no governing statute in this state, the question of the sufficiency of the complaint might present an interesting subject of inquiry; but, in our judgment, much of the argument of appellant's counsel is beside the mark.

Chapter 130, Laws of 1911 (the Pure Food and Drug Act), makes it unlawful for any person, firm or corporation to sell, or offer for sale, any article of food which is adulterated. The term "food" is defined to include "all articles used as food,

drink, confectionery or condiment by man or animals." (Section 1.)   An article of food is deemed to be adulterated "if it contains any proportion of a filthy, diseased, decomposed, putrid or rotten animal or vegetable substance," or "if it contains any added poisonous or other added deleterious ingredient." (Section 2.)

"Actionable negligence arises only from a breach of legal duty, and, to state a cause of action for damages resulting from negligence, it is necessary that the complaint disclose the duty, the breach, and the resulting damages." (*Fusselman* v. *Yellowstone Valley L. & I. Co.*, 53 Mont. 254, Ann. Cas. 1918B, 420, [2]   163 Pac. 473.)   It is elementary that the duty, the breach of which is made the gist of the action, must be a duty which the defendant owes to the plaintiff.

In *Conway* v. *Monidah Trust*, 47 Mont. 269, L. R. A. 1915E, 500, 132 Pac. 26, we reviewed at length the authorities which have considered statutes of the same general character, and the discussion need not be repeated here.   It is sufficient for the purpose of this case to say that the Pure Food and Drug Act is a general police regulation, which recognizes the fact that the sale of adulterated foodstuff is a constant menace to the health of the consuming public, and the duty enjoined by it upon the seller is such that a violation of it can affect the public health only through the individuals who are injuriously affected by partaking of such food.   The duty imposed upon the vender is one which extends to the public considered as a composite of individuals, and, if the plaintiff sustained some special injury by reason of defendant's violation of the statute, her right to recover cannot be questioned.

It is alleged in the complaint that at the time of the sale the [3]   defendant was engaged in business in Missoula County, selling at retail, to the public generally, meat and meat products for human consumption.   These facts are sufficient to bring the case within the statute and to disclose the duty which the defendant owed to the public, including the plaintiff, to see to it

that the food products offered for sale were not adulterated, within the meaning of that term as employed in the statute.

It is further alleged that the defendant sold and delivered to [4] Hugh Kelley, for the immediate use of his family, including plaintiff, six cooked and spiced pigs' feet, which were adulterated, in that they "contained in and on them diseased, infected, putrid, decomposed and poisonous acid and animal matter." By this allegation the defendant is charged with a violation of the statute and a breach of duty, and such violation is of itself legal negligence. The subject is not a new one. It has been before this court on many occasions.

By an Act approved September 13, 1887 (Extra Session 15th Territorial Legislature, p. 68), the amount of high explosives which anyone was permitted to store in a city, town or village was limited to fifty pounds. The violation of that statute resulted in the death of several members of the fire department of Butte. It was held that the corporation guilty of the violation was subject to punishment as for a misdemeanor, and was likewise liable for damages in a civil action at the suit of the personal representative of one of the deceased firemen. (*Cameron* v. *Kenyon-Connell Com. Co.*, 22 Mont. 312, 74 Am. St. Rep. 602, 44 L. R. A. 508, 56 Pac. 358.)

Section 8536, Revised Codes, requires the use of safety cages in certain mining operations, and it was held that the violation of the statute gives rise to an action for damages to an employee injured by the failure of the employer to observe the law. (*Monson* v. *La France C. Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)

Section 4289 requires a railway company, in the operation of trains, to give certain designated signals on approaching crossings, and this court held that the failure of a railway company to observe the law constitutes negligence. (*Hunter* v. *Montana C. Ry. Co.*, 22 Mont. 525, 57 Pac. 140; *Sprague* v. *Northern Pac. Ry. Co.*, 40 Mont. 481, 107 Pac. 412; *De Atley* v. *Northern Pac. Ry. Co.*, 42 Mont. 224, 112 Pac. 76.) ,

By section 8535, Revised Codes, the owner of a mining shaft within the limits of a city, town or village, or within one mile of such limits, is required to protect the same by fence or covering. It was held that the owner who disregarded the statute was liable in damages to one injured by reason thereof, and that failure to observe the law is negligence *per se.* (*Conway* v. *Monidah Trust,* above.)

Section 1739, Revised Codes, limits the period of labor in underground mines to eight hours per day. Speaking of the application of the rule under consideration to the facts of that case, this court said: "It is the general rule that, where a statute makes a requirement or prohibits a thing, for the benefit of a person or class of persons, one injured by reason of a violation of it is entitled to maintain an action against him by whose disobedience he has suffered injury; and this is true whether the statute is penal in its character or not. [Citing authorities.] A violation of the statute is negligence *per se,* or, properly speaking, legal negligence." (*Melville* v. *Butte-Balaklava Copper Co.,* 47 Mont. 1, 130 Pac. 441.)   These cases sufficiently illustrate the principle involved. The statutes considered are all police regulations, designed to protect the health and safety of the people and to promote the general welfare, and, in principle, are not distinguishable from the Pure Food and Drug Act. (*Meshbesher* v. *Cannnellene Oil & Mfg. Co.,* 107 Minn. 104, 131 Am. St. Rep. 441, 119 N. W. 428.)

Prior to the enactment of Chapter 130, above, there were in force at different periods of our history statutes obviously intended to protect the public health by regulating the sale of impure food, but in every instance the statute made the knowledge on the part of the seller of the impurity of the food sold the gist of the offense.   (Pen. Code 1895, sec. 683; Rev. Codes, sec. 8496.)   Those statutes proceeded upon the theory that a dealer who sold impure food knowing it to be impure was guilty of perpetrating a fraud upon the public.   (Pen. Code 1895, sec. 682.) In the enactment of the Pure Food and Drug Act, however, a [5]   different theory was adopted.   The sale of adulterated food

is absolutely prohibited. The seller is made the insurer of the purity of food products sold by him, and guilty knowledge on his. part is no longer an ingredient of the offense. The obligation imposed by the statute is personal, and cannot be avoided by showing that the impure food was purchased from a foreign concern, and bore the stamp of approval of the government inspectors. (*Rinaldi* v. *Mohican Co.*, 171 App. Div. 814, 157 N. Y. Supp. 561; *Catani* v. *Swift & Co.*, 251 Pa. 52, L. R. A. 1917B, 1272, 95 Atl. 931.) Under section 5115, Revised Codes, the [6] warranty of food offered for sale extended only to the immediate purchaser, evidently upon the theory that it arose out of the contractual relations of the parties. Under Chapter 130 the warranty extends to the public generally, and the liability of the vender rests upon the principle that his original act in selling impure food was unlawful, and that he is responsible for the natural consequences of his wrongful act. But, in any event, the liability arises from a violation of the statute, and it is immaterial whether the foundation is laid in negligence or warranty.

The plaintiff alleges, further, that as the direct and proximate [7] result of the sale of this impure food, and her partaking of it, she was made violently ill, to her great damage. The complaint discloses the duty, the breach, and the resulting damage, and is therefore sufficient under the authorities cited.

There is but one form of civil action in this state (section 6425, Rev. Codes), and a statement of the facts constituting the cause of action, with the other matters enumerated in section [8] 6532, Revised Codes, is all that is required. If the facts stated disclose a violation of the statute and the resulting damage, the complaint is not rendered insufficient because it contains other allegations which might have been omitted.

It was not necessary for plaintiff to refer to the Pure Food [9] and Drug Act in order to recover damages for injuries arising from a violation of it. The courts take judicial notice of the general and public domestic statutes, and they need not be specially pleaded. (Rev. Codes, sec. 7888; 36 Cyc. 1236, 1237.)

Under the theory adopted, the allegation that defendant knew, [10] or in the exercise of reasonable care should have known, of the impure condition of the food at the time of the sale, is surplusage, and the objection to instruction No. 2 was properly overruled.

This court has frequently recognized the rule for which [11] appellant contends: That there must be some substantial evidence proving, or tending to prove, the causal connection between defendant's negligence and plaintiff's injury; but the rule does not require that a chemical analysis be made of food in order to establish the fact that it is impure or unwholesome. Evidence was introduced to show the manner in which this meat was handled by defendant; that it was exposed to dust and flies; that it was sold for the use of plaintiff; that as a result of eating it she was made violently ill; and that her illness was attributable to food poisoning. The jurors likewise had before them the fact that the meat was kept by plaintiff twenty-four hours before it was used and the manner in which it was kept. Without reviewing the testimony at length, we think it is sufficient to warrant a finding that the meat was adulterated when sold by defendant, and that plaintiff's illness resulted proximately from eating it.

The complaint states but a single cause of action, viz., a cause of action for damages arising from the violation of a duty imposed by statute. Defendant's motion to compel plaintiff to elect was therefore properly overruled.

Notwithstanding the statutory liability of the defendant, the [12, 13] defense of contributory negligence was available. (Melville v. Butte-Balaklava C. Co., above.) But contributory negligence is not to be presumed. It must be made to appear from the evidence, and it may appear from the evidence offered by the plaintiff. In Harrington v. Butte, A. & P. Ry. Co., 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8, we announced the rule as follows: "Whenever the plaintiff's own case presents evidence which, if unexplained, would make out prima facie contributory negligence on his part, there must be further evi-

dence exculpating him or he cannot recover." Defendant offered no evidence of contributory negligence, but, in reliance upon the testimony of plaintiff, sought to have the question [14] presented by an offered instruction. The court did not err in refusing the instruction, for either of two reasons: It does not state the rule of law correctly, and in our opinion the evidence does not justify the submission of the question. While the plaintiff had the opportunity to examine the meat before she ate it, there was nothing in its appearance to justify her in discarding it as unfit for human consumption. She had the right to assume in the first instance, that the law had been observed and that the meat was wholesome. Furthermore, she had the assurance of the defendant, conveyed to her by her husband, that the bleached condition was occasioned by overcooking and that the meat was all right. The offered instruction ignored the surrounding circumstances, and predicated negligence upon her opportunity to examine the meat, and upon that alone.

The court refused to limit plaintiff's right to recover to damages arising from physical pain. It is not contended that mental suffering is not a proper element to be considered under appropriate pleadings; but it is said in appellant's brief that "the complaint alleges no suffering other than physical suffering." This contention is without merit. Plaintiff alleges that, as the direct and proximate result of eating the meat, she was made sick, describing the sickness in detail, and "plaintiff has suffered great and excruciating pains and mental suffering." ·

By paragraph 11 of the charge the jurors were told that, if [15] they found the issues in favor of the plaintiff, they might award damages in such amount *as they believed* would compensate her, *etc.* It is urged that by this instruction the jurors were left free to disregard the evidence and base the amount of recovery upon their individual views of the extent of the injury; and *Rugepstein* v. *Ottenheimer,* 78 Or. 371, Ann. Cas. 1917E, 953, 152 Pac. 215, is cited to support the contention that for the error in this instruction a new trial should be ordered. While the law imposes upon the jurors the duty to consider the evidence

alone in estimating the amount of damages, it does not follow that the judgment should be reversed because of the failure of the court to impress that fact upon their attention, and, so far as our investigation discloses, the case cited stands alone in the extreme view adopted. The authorities generally treat an instruction of this character as nonprejudicial. It presents a case of nondirection, rather than misdirection, of omission rather than commission. Every jury, before it enters upon its consideration of a case, is solemnly sworn to well and truly try the matter in issue and a true verdict render according to the evidence. (Rev. Codes, sec. 6745.) The court in instruction No. 1 advised the jury that every element essential to a recovery must be established by a preponderance of the evidence, and, though this rule was not made applicable to the amount of recovery by specific direction, we think it is impossible that defendant suffered prejudice by reason thereof. It is equally the duty of the jury to accept the law as given by the court; but the failure of the court to so instruct the jury is not reversible error. These are questions common to the trial of every civil action, and some presumption in favor of the intelligence of the jurors must be indulged. The defendant did not request a more specific instruction, and, in the absence of some suggestion that prejudice resulted, we are not warranted in interfering. (Rev. Codes, sec. 6593.)

If every microscopic defect in the proceedings of a trial is to be counted prejudicial error, litigation will become interminable over subtle refinements and legal quibbles which never affect the decision of the merits. The late Henry B. Brown, afterward associate justice of the supreme court of the United States, said: "There is nothing which tends to belittle the authority of courts or to impair the confidence of the public in the certainty of justice so much as the habit of reversing cases for slight errors in admitting testimony, or trifling slips in the charge. I have in mind one case which was carried to the supreme court six times and was reversed every time. Better by far the practice of the English courts and the federal supreme court, where every in-

tendment is made in favor of the action of the lower court, and cases are rarely reversed except for errors going to the very merits—errors which usually obviate the necessity of a second trial.'' (Report of American Bar Association 1889, p. 285.)

For authorities supporting the view that the giving of this instruction did not constitute reversible error, see *Burr* v. *McCallum*, 59 Neb. 326, 80 Am. St. Rep. 677, 80 N. W. 1040; *Missouri O. & G. Ry. Co.* v. *Adams*, 52 Okl. 557, 153 Pac. 200; *Birmingham & R. R. Co.* v. *Lee*, 153 Ala. 386, 45 South. 164; *Austin Fire Ins. Co.* v. *Sayles* (Tex. Civ. App.), 157 S. W. 273; *Isaacs* v. *McLean*, 106 Mich. 79, 64 N. W. 2; *Gorman* v. *People*, 17 Colo. 596, 31 Am. St. Rep. 350, 31 Pac. 335; *Walters-Pierce Oil Co.* v. *Deselms,* 212 U. S. 159, 53 L. Ed. 453, 29 Sup. Ct. Rep. 270.

Dr. Dodds, the family physican who attended plaintiff, was [16] permitted to give his opinion or diagnosis of the case based upon the examination he made of the patient and the history of the case as disclosed to him by her. It is contended that his opinion, based in part upon information furnished by the patient, was inadmissible, and cases may be found sustaining this view; but the overwhelming weight of authority approves the rule announced in *Barber* v. *Merriam*, 11 Allen (Mass.), 322. The discussion of the subject is lengthy, and cannot be reproduced here. Among other things the court said: ''The opinion of a surgeon or physician is necessarily formed in part on the statements of his patient, describing his condition and symptoms, and the causes which have led to the injury or disease under which he appears to be suffering. This opinion is clearly competent as coming from an expert.'' It was held, further, that the physician, with the patient's consent, may testify to the [17] statements made to him by the patient, and upon which, in part, he based his diagnosis and treatment. The reasoning of the court commends itself to our judgment. Cases supporting this rule will be found cited in Rogers on Expert Testimony, section 47, and in 11 R. C. L. 610.

A hypothetical question was propounded to Dr. Brooke, in
[18] which was recited a history of plaintiff's condition before
she ate the meat in question, the fact that she ate of the meat,
and the history of her subsequent illness, and upon the facts
recited Dr. Brooke was asked to give his opinion as to the cause
of the illness. It is urged that the evidence was improperly re-
ceived (1) because the question called for a statement of an
ultimate fact to be determined by the jury (2) because the ques-
tion was predicated upon part only of the evidence upon the
subject, and (3) because the opinion could not have evidentiary
value.

In *Copenhaver* v. *Northern Pac. Ry. Co.*, 42 Mont. 453, 113
Pac. 467, we adopted the rule that whenever the conclusion to
be drawn from the facts stated depends upon professional or
scientific knowledge or skill not within the range of ordinary
training or intelligence, the conclusion may be stated by a quali-
fied expert, even though the conclusion is a statement of an
ultimate fact to be found by the jury. The rule as thus stated
is supported by the decided weight of authority and by the better
reasoned cases.

In Rogers on Expert Testimony, section 50, it is said that a
witness skilled in the science and practice of medicine may state
his opinion that a person's ill health resulted from a certain
cause. In *Transportation Line* v. *Hope*, 95 U. S. 297, 24 L. Ed.
477, it is held that it is not an objection that an expert witness
is asked a question involving the point to be decided by the jury.
To the same effect are *Daly* v. *City of Milwaukee*, 103 Wis. 588,
79 N. W. 752; *Mutual Life Ins. Co.* v. *Shipman*, 119 N. Y. 324,
24 N. E. 177.

In *De Sandro* v. *Missoula L. & W. Co.*, 52 Mont. 333, 157
Pac. 641, we said: "In putting a hypothetical question, counsel
may assume as established, for the time being, all the facts in
evidence tending, directly or by fair inference, to establish his
theory of the case.  *  *  *  He need not embody all the evi-
dence on the subject to which it relates. If opposing counsel
does not think the question incorporates all of the facts in evi-

dence, he can include them in questions propounded by himself. * * * It is then for the jury to say whether the facts assumed by the question are really established and whether the opinion of the witness has any probative value." This answers completely the other objections to the question propounded to Dr. Brooke.

One of the counsel for plaintiff is charged with misconduct in [19] asking certain questions intended to solicit the information that prior to the sale of the meat in question the defendant had been prosecuted for violating the pure food law. The court properly sustained objections to the questions, and directed the jury to disregard the fact that the questions had been aked. We do not agree with appellant that there was misconduct on the part of counsel; but, under any view of the matter, the admonition to the jury must be accepted as removing any prejudicial effect. (*Pascoe* v. *Nelson,* 52 Mont. 405, 158 Pac. 317.)

Plaintiff was awarded damages in the sum of $10,000, and [20, 21] complaint is made that the verdict is excessive. In passing we may observe that the fact that a verdict appears to be excessive is not a ground for a motion for a new trial. It is only when the excessive damages appear to have been given under the influence of passion or prejudice that a new trial may be granted for that reason. (Rev. Codes, sec. 6794, subd. 5.)

There is no standard fixed by law for measuring the value of human health or happiness. In every case of personal injury a wide latitude is allowed for the exercise of the judgment of the jury, and, unless it appears that the amount awarded is so grossly out of all proportion to the injury received as to shock the conscience, this court cannot substitute its judgment for that of the jury. (*Armitage* v. *Chicago, M. & St. P. Ry. Co.,* 54 Mont. 38, 166 Pac. 301; *White* v. *Chicago, M. & St. P. Ry. Co.,* 49 Mont. 419, 143 Pac. 561.) The appearance of the witnesses on the stand, their manner in testifying, their apparent candor or lack of it, are all elements which enter into an estimate of their credibility. These elements were present in the lower court, but cannot be reproduced here.

It was for the jury to determine whether the evidence touching the character and extent of plaintiff's illness was worthy of credit, and the verdict is their answer to the inquiry, Was she malingering or was she seriously injured? There is ample evidence from which the jury could conclude that at the time of partaking of the meat plaintiff was thirty-seven years of age, in good health, and the mother of two young boys; that, as the result of eating this meat, she contracted diarrhoea, which has apparently become chronic, and that she has lost control of other organs of the body; that she is practically a nervous wreck; and that any prospect of improvement is problematical. Aside from the question of physical pain and suffering, the mental distress resulting from her injuries was an element of damages cognizable by the jury. Her appearance on the witness-stand a year after the sale of the meat cannot be depicted by a printed record, yet it may have furnished the best evidence to the jury and presiding judge of the extent of her damage.

The amount of the recovery is very large, but we cannot say that it is out of proportion to the extent of the injury—certainly not so far excessive as to indicate that it was prompted by the passion or prejudice of the jury.

We cannot treat the assignments in detail. We have examined them all, and content ourselves with saying that we find no reversible error.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE COOPER concur.