26938.  SOUTHERN GROCERY STORES INC. *v.* DONEHOO.

DECIDED NOVEMBER 30, 1938.   REHEARING DENIED DECEMBER 14, 1938.

*A. S. Clay, E. D. Smith Jr., Hamilton Lokey, M. E. Kilpatrick, Hirsch & Smith,* for plaintiff in error.

*James A. Branch, Thomas B. Branch Jr.,* contra.

BROYLES, C. J.  █   The plaintiff sued the defendant for damages for selling her mullet fish which she alleged were "stale, spoiled, impure, and unfit for human consumption." Her petition recited that on August 23, 1935, she and her daughter, Mrs. J. A. Gramling, bought certain mullet fish from the defendant through its butcher and employee, Ralph O. Thompson, who told her then that the fish were fresh and good; she immediately took the fish to her home and put them on ice; the next morning she cooked them for breakfast and served them to her family; her son, W. L. Donehoo Jr., ate of the fish, and, thereafter, about two o'clock in the afternoon, he began to suffer acute cramps and abdominal pains, and continued so to suffer until he retired for the evening; that on the following morning he arose and entered the kitchen and suddenly

collapsed; he was put in bed, and a doctor called, who diagnosed his illnes as food poisoning; despite all that could be done, his illness became worse and he died on August 31, 1935; his illness and death resulted solely from his eating the fish, which "were stale, spoiled, impure, and unfit for human consumption." Paragraph 16 of the petition reads as follows: "The illness and death of petitioner's said son was caused by the defendant's negligence in selling said fish which it knew, or in the exercise of ordinary care could have known, were not fit for human consumption and would cause any person eating said fish to become sick." And paragraph 17 of the petition alleged that "the defendant was negligent in selling stale, spoiled, and impure fish as wholesome food." It was further alleged, in other paragraphs, "that the defendant was negligent in keeping the fish until it had become stale, spoiled, and unfit for human consumption, and then selling it to petitioner to be used as food; that defendant was negligent in selling said fish without having made a proper inspection to determine whether said fish were fit for human consumption, and without inspecting the fish at the time of the sale to determine whether the fish were so fit; that defendant was negligent in representing said fish as pure and wholesome when, in fact, it did not actually know whether the fish were pure and wholesome, or stale, spoiled, and impure." The petition further alleged that her son, before he ate the fish, was active and strong and helped petitioner in her housework, ran errands for her, and did many other things for her comfort and support, and she was dependent on him for said services, and that his services were reasonably worth the sum of fifty dollars a month; and she sued for the full financial value of his life, alleging that he did not leave surviving him any wife or child, that he contributed to her support, and that she was dependent on him.

The defendant demurred generally to the petition, and specially to paragraphs 16 and 17. The special demurrers alleged that the allegations in said paragraphs are too vague and indefinite and are mere conclusions of the pleader, without support of any allegations of fact upon which to predicate said conclusions. In our opinion all of the demurrers were properly overruled. The petition set out a cause of action, and paragraphs 16 and 17, when considered in the light of the various allegations of fact made in other paragraphs of the petition, were not subject to the special demurrers

interposed. It is not necessary, in a case of this kind, for the plaintiff to show that the defendant had actual knowledge that the food sold by him was unwholesome. It is sufficient if the plaintiff shows that the defendant ought to have known of the bad condition of the food, and was negligent in furnishing it, by reason whereof the plaintiff's son was injured. 11 R. C. L. 1118, 1119, § 25; *McPherson* v. *Capuano, 31 Ga. App.* 82 (121 S. E. 580).

■ In our opinion the evidence authorized the verdict for the plaintiff. It showed that the fish bought by the plaintiff on the occasion referred to were divided between her and her daughter, Mrs. Gramling; that Mrs. Gramling and her family lived in their own home and not with the plaintiff; that in each household those members of the family who ate the fish became ill soon afterwards, while those who did not eat any of the fish remained in good health. Mrs. Gramling testified as follows: "The first bite that I took of the fish was bitter, or something was bitter, and I spat it out, and I think I took about two more bites—but I don't know, I thought it was me—I was tired and I just did not want any." The testimony of the medical experts authorized the jury to find that the death of the plaintiff's son resulted from his eating poisonous food, and that the poisonous food was fish; and there was other evidence authorizing a finding that the poisonous food was the fish bought from the defendant by the plaintiff; and that the defendant, in selling the fish, had violated the pure-food statute embodied in the Code, §§ 42-109 (7), 42-115, and 42-9901, and, therefore, was guilty of negligence as a matter of law.

In our opinion the decision in this case is controlled by the very recent holding of the Supreme Court in *Donaldson* v. *Great Allantic & Pacific Tea Co., 186 Ga.* 870 (199 S. E. 313). It is true that in that case the petition charged a violation of the pure-food law, while the petition in the instant case did not expressly so charge, but it did allege that the defendant sold the plaintiff fish that was "stale, spoiled, impure, and unfit for human consumption;" and the pure-food statute prohibits the selling of "any portion of an animal unfit for food, whether manufactured or not," or any food "if it consists in whole or in part of a filthy, decomposed, or putrid animal or vegetable substance." We think that the language of the petition was sufficient to charge a violation of the pure-food law. In the *Donaldson* case, supra, the court held (among other things

not material to refer to in this case), as follows: "While the pure-food law was designed for the protection of the public, and did not in express terms declare other than public duties, the plaintiff as a member of the public for whose benefit it was enacted could invoke its provisions for the purpose of showing negligence as a matter of law, if injured by the violation of a duty so imposed. . . Under the pure-food act (§ 42-109 (7), supra), an article of food is adulterated if it consists in whole or in part of a 'filthy, decomposed, or putrid animal . . substance,' or of 'any portion of an animal unfit for food.' . . In pleading a cause of action, where a domestic or Federal statute is relied on, it is unnecessary to incorporate a statement of the law. . . Whatever may be the ordinary signification of the word 'adulterated,' the statute itself contains the definition applicable in this case. . . Section 42-115 . . does not impose any duty whatever upon a seller of foods, or upon any one. . . Under this section a dealer selling food which is adulterated within the meaning of the statute would not violate its provisions, and therefore would not be guilty of negligence per se, if he had obtained the prescribed guaranty [a guarantee signed by the person from whom he bought the food]; but the guaranty would not relieve him from the liability referred to in section 105-1101, if he is negligent, as a matter of fact, in selling unwholesome food by the use of which another is injured. It follows that section 42-115 merely creates an exception to the statute in favor of those who obtain and establish the guaranty; and the plaintiff in this case was not required to negative such exception in her petition; its existence in a particular case being a matter for defense. . . The definition of an adulterated article of food as contained in section 42-109 (7), supra, is not limited to food in a sealed package. . . It is our opinion that the pure-food and drug act of 1906 did not in any manner change or repeal the common-law rule as now stated in the Code, § 105-1101; and also that as applied to this case their relative force and meaning were not affected by the adoption of the Codes of 1910 and 1933. . . In a suit for damages against a seller of unwholesome food, by the use of which the plaintiff is injured, it is still necessary to prove that the defendant *either* knew of the unwholesome condition of the food or was guilty of negligence in the transaction. But how may such negligence be established? As to civil actions, the only effect of the pure-food

act is that whereas *before* its passage an action for damages resulting from negligence could be sustained only by allegation and proof of such negligence as a matter of fact, that is, according to the standard of ordinary prudence as applied to the circumstances, the plaintiff may *now* show negligence as a matter of law by establishing a breach of the statutory duty; or he may rely on both classes of negligence, according to the facts. In other words, the passage of this statute did not affect the nature or basis of the cause of action, but related only to the standard of care by which negligence may be determined. . . In a civil case of this kind the plaintiff is not required to establish more, on the issue of negligence, than a violation of the statute; and, from the terms of the pure-food act (§ 42-109 (7)), it is clearly apparent that it does not include either knowledge of the impurity of the food or negligence in fact as an ingredient of the offense of selling adulterated food, as therein defined. . . So far as the decisions by the Court of Appeals in *Parker* v. *State*, 24 *Ga. App.* 267 (100 S. E. 452), and *Brown* v. *State*, 36 *Ga. App.* 119 (135 S. E. 518), may be contrary to the rulings in the instant case, these decisions are disapproved."

Under the foregoing rulings of the Supreme Court, the verdict for the plaintiff in the case at bar was amply authorized by the evidence; and none of the special grounds of the motion for new trial shows cause for a reversal of the judgment.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*