## BOLITHO, Respondent, v. SAFEWAY STORES, INC., Appellant.

(No. 7,899.)

(Submitted October 4, 1939. Decided October 27, 1939.)

[95 Pac. (2d) 443.]

214

*Messrs. Alf C. Kremer* and *Mr. Rex F. Henningsen,* for Appellant, submitted a brief; *Mr. Kremer* argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief; *Mr. Shone* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action for damages. The complaint alleges that on September 11, 1937, defendant sold to plaintiff's mother a package of food called ''Ener-g'' and advised her that it was good and proper to be fed to her family; that the food was in fact adulterated and unwholesome, and that it contained bugs, worms and string; that plaintiff, then seven years of age, ate some of the food after it was cooked and prepared by her mother

without knowledge of its true condition, thereby causing her to become sick.

After defendant's demurrer to the complaint was overruled it filed an answer in the form of a general denial. Thereafter, and long before trial, defendant asked leave to file a proposed amended answer. The proposed amended answer, in addition to a general denial, alleged as an affirmative defense that defendant purchased the food in question from the Western States Grocery Company, a wholesale grocer, which in turn bought it from the manufacturer, the Ener-g Corporation of Seattle, Washington; that when it was sold to plaintiff's mother, it was in the original unbroken package in which it was placed by the manufacturer; that the food conforms to the rules and regulations of the United States Government, under the Food and Drug Acts of Congress of June 30, 1906, 21 U. S. C. A., secs. 1 et seq., and all national Acts; that the defendant is not subject to the provisions of sections 2578 to 2599, inclusive, of the Revised Codes, and is not liable for damages alleged to have been sustained by plaintiff; that upon the original package is printed a guaranty of the manufacturer with its address, in which it guaranteed that the food "was not and is not adulterated or misbranded in the original, unbroken package in which said article was received by said defendant" within the meaning of sections 2578 to 2599, inclusive.

Objection was made to the filing of the amended answer upon the ground that it did not state facts sufficient to constitute a defense. The court sustained the objection and denied the motion to file the amended answer. The jury found for plaintiff, and from the judgment entered on the verdict defendant appealed after its motion for new trial was denied.

While several specifications of error are made, they all relate to the question of the meaning and effect of our statutes bearing upon actions of this character, and particularly whether the guaranty pleaded in the proposed amended answer constitutes a defense to plaintiff's alleged cause of action.

Section 7618, Revised Codes, provides: "One who makes a business of selling provisions for domestic use warrants,

by a sale thereof, to one who buys for actual consumption, that they are sound and wholesome.'' This statute simply enacts into statutory form what many courts hold the rule to be in the absence of a statute. (*Burkhardt* v. *Armour & Co.*, 115 Conn. 249, 161 Atl. 385, 90 A. L. R. 1260, and cases cited in the note in 90 A. L. R. 1269; *Greco* v. *S. S. Kresge Co.*, 277 N. Y. 26, 12 N. E. (2d) 557, 115 A. L. R. 1020; *Swengel* v. *F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 Pac. (2d) 930; 22 Am. Jur. 880.)

There is a difference of opinion as to whether there is an implied warranty that food sold for consumption is wholesome and fit for food as applied to goods concealed in cans or sealed packages. (22 Am. Jur. 882, 883.) Whatever the rule may be as to an implied warranty as to such foods, section 7618 is all-inclusive. It relates to foods sold in cans or sealed packages, as well as to food sold in bulk. When section 7618 is read in conjunction with the Pure Food and Drug Act, sections 2578 et seq., ''The seller is made the insurer of the purity of food products sold by him, and guilty knowledge on his part is no longer ·an ingredient of the offense. The obligation imposed by the statute is personal, and cannot be avoided by showing that the impure food was purchased from a foreign concern, and bore the stamp of approval of the government inspectors. * * * Under section 5115 [now sec. 7618], Revised Codes, the warranty of food offered for sale extended only to the immediate purchaser, evidently upon the theory that it arose out of the contractual relations of the parties. Under Chapter 130 [now secs. 2578 et seq.] the warranty extends to the public generally, and the liability of the vendor rests upon the principle that his original act in selling impure food was unlawful, and that he is responsible for the natural consequences of his wrongful act.'' (*Kelley* v. *John R. Daily Co.*, 56 Mont. 63, 181 Pac. 326, 329.)

Defendant contends that plaintiff's action is based upon a violation of sections 2578 et seq., Revised Codes, and not upon section 7618. It is our view that the action is based upon a

violation of section 7618, as well as sections 2578 et seq. Section 2578 makes it unlawful for any person, firm or corporation to sell or offer for sale any article of food which is adulterated or misbranded. Section 2579 defines the term "adulterated," and among other definitions provides that food is adulterated if it contains any "deleterious ingredient," or "if it contains any proportion of a filthy, diseased, decomposed, putrid, or rotten animal or vegetable substance."

Section 2588 provides: "No dealer shall be prosecuted under the provisions of this Act for selling or offering for sale any article of food or drugs, as defined herein, when the same is found to be adulterated or misbranded within the meaning of this Act, in the original, unbroken package in which it was received by said dealer, when he can establish a guarantee, signed by the wholesaler, jobber, or agent, or other party residing in the United States from whom he purchased such article, or if a proper printed guarantee of the manufacturer with his address be upon the package or container, to the effect that the same is not adulterated or misbranded in the original unbroken package in which the said article was received by said dealer, within the meaning of this Act, designating it, or within the meaning of the Food and Drug Act, enacted by the senate and house of representatives of the United States of America in Congress assembled June 30, 1906. Said guarantee to afford protection must contain the name and address of the party or parties making the sale of such article to such dealer, or of the manufacturer thereof as herein specified, and in such case said party shall be amenable to prosecution, fines, and other penalties which would attach in due course to the dealer under the provisions of this Act."

And section 2596 in part provides: "And no article of foods or drugs shall be deemed to be adulterated, misbranded, or otherwise subject to the provisions of this Act, when such article of food or drugs conforms to the rules and regulations of the United States government under any national Act or Acts."

Defendant's contention that its proposed amended answer constituted a defense cannot be sustained. The effect of that part of section 2596 above quoted need not now be determined. There is no allegation in defendant's proposed answer tending to show that the rules and regulations of the United States government permit a sale of food containing bugs and worms. The allegation is that the food in question "conforms to the rules and regulations of the United States government under the Food and Drug Act of Congress of June 30, 1906, and all national Acts and Acts." This allegation is but the conclusion of the pleader. The proposed answer sets forth no fact from which it can be said that the rules and regulations of the United States government permit the sale of foods containing worms and bugs such as shown here; hence that part of such answer may be disregarded.

It then remains to determine whether the alleged guaranty of the manufacturer constitutes a defense to plaintiff's cause of action. Section 2588 does not purport to make an exception as against one who sells food in the original package containing the guaranty of the manufacturer. It simply provides that such seller shall not be prosecuted criminally. That section was enacted with the knowledge on the part of the legislature that under section 7618 the seller may be sued on his civil liability for damages. Section 2588 still recognizes that the seller of food in the original package, manufactured by another, is violating the law if the food be adulterated, and then even though he has the guaranty of the manufacturer; but it says he shall not "be prosecuted" under the provisions of the Act as for a misdemeanor, punishment for which is provided in section 2599. In such case the prosecution shall be against the manufacturer who shall be "amenable to prosecution, fines, and other penalties which would attach in due course to the dealer under the provisions of this Act." The statute simply relieves the holder of the guaranty from the criminal penalties imposed by the Act.

The dealer without the guaranty is certainly violating the law if the foods be adulterated when sold. He is also violating

the law even though he has a guaranty, but in such case he shall not be prosecuted criminally. It does not relieve him from the civil liability under the warranty contained in section 7618, as affected by section 2578.

The cases of *Donaldson* v. *Great Atlantic & Pacific Tea Co.,* 186 Ga. 870, 199 S. E. 213, and *Southern Grocery Stores, Inc.,* v. *Donehoo,* 59 Ga. App. 212, 200 S. E. 335, use language at variance with our conclusion here in considering a statute nearly identical with our section 2588; but these cases are distinguishable. The second case cited simply follows the first. The first was by the supreme court of Georgia, and what was said on the subject was in connection with a consideration of the sufficiency of the complaint. Georgia does not have a statute like our section 7618. It does have a statute, aside from the criminal Pure Food and Drug Act, which imposes liability for carelessly selling unwholesome provisions. The Georgia court, while holding that a statute corresponding to our section 2588 could be relied upon in defense in a civil action, nevertheless expressly held that the manufacturer's guaranty would afford no protection against liability under the statute imposing civil liability for carelessness covered by the other statute.

Other cases seemingly at variance with our holding are *Bigelow* v. *Maine Central R. Co.,* 110 Me. 105, 85 Atl. 396, 399, 43 L. R. A. (n. s.) 627, and *Trafton* v. *Davis,* 110 Me. 318, 86 Atl. 179. But in the *Bigelow Case* there was absent any warranty. That this influenced the court in its decision is made plain by the concluding paragraph of the opinion, wherein it stated: "But in the case at bar, upon the assumption that the plaintiff was made sick by the asparagus furnished her by the defendant company, it is the opinion of the court that in the absence of an express warranty the defendant is not liable." The *Trafton Case* simply followed the *Bigelow Case.* Under our statutes there is an express warranty and liability for breach thereof, and there need not be allegations or proof of negligence. (*Kelley* v. *John R. Daily Co.,* supra.)

The only object of alleging or proving a violation of sections 2578 et seq. in addition to section 7618, is to enable plaintiff to

avail herself of the enlarged meaning of section 7618, as pointed out in the *Kelley Case*.

Holding, as we do, that the guaranty of the manufacturer does not relieve the seller of food in the original package from civil liability, it was proper to refuse leave to file the proposed amended answer. It was also proper to instruct the jury relative to section 7618, as well as sections 2578 et seq.

The cause was properly tried under the views announced in the case of *Kelley* v. *John R. Daily Co.*, supra, and the judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Erickson and Arnold concur.