George WILLIS, III, Administrator d. b. n. of Estate of Jacob Willie Bell, deceased, Appellant,

v.

**PENNSYLVANIA RAILROAD COMPANY, a corporation, Appellee.**

No. 7835.

United States Court of Appeals
Fourth Circuit.

Argued April 9, 1959.

Decided Aug. 7, 1959.

Robert Cantor and J. D. McMullan, Richmond, Va., (Cantor, McMullan & Cantor, Richmond, Va., on the brief), for appellant.

Thomas H. Willcox, Jr., and Thomas H. Willcox, Norfolk, Va. (Willcox, Cooke, Savage & Lawrence, Norfolk, Va., on the brief), for appellee.

Before SOPER, Circuit Judge, and BOREMAN and THOMPSON, District Judges.

THOMPSON, District Judge.

This case is before the Court on appeal from the decision of the District Court denying appellant's motion to set aside the verdict of the jury and to enter judgment for appellant or to order a new trial on the single issue of damages or on all the issues. The appellant, personal representative of J. W. Bell, deceased, plaintiff in the trial court, and the appellee, Pennsylvania Railroad Company, defendant in the trial court, will be referred to herein as plaintiff and defendant, respectively.

Seaman 2nd Class J. W. Bell was killed when the automobile operated by him collided with the side of defendant's moving train where the highway intersects defendant's double-track main line railroad in Northampton County, Virginia. Plaintiff brought this action for damages on account of Bell's death.

The defendant's evidence tended to show that:

at the point where the highway crosses the tracks, the railroad ran generally north and south, and the highway ran generally east and west. Bell was alone in his automobile traveling west, it was daylight and the weather was clear; the train was proceeding south at a speed of 22 to 25 miles per hour. Bell had a clear view of the crossing for 500 feet before he reached it, and the track was visible to him in the direction from which the train was approaching for a distance of several hundred feet when his vehicle was 300 to 400 feet from the crossing. The railroad crossing was indicated by prominently displayed signs along the highway for several hundred feet east of the crossing which was equipped with electrically activated gates, flashing lights, and bells. The gate on the east side of the track, when lowered, extended across the west-bound highway traffic lane and similarly, the gate on the west side of the track, when lowered, extended across the east-bound traffic lane.

The only eye-witness to the collision testified that the locomotive whistle was blowing, its headlight burning, and its bell ringing as it approached the crossing; the gates were down, and the decedent attempted to "beat" the train across the track by swerving out of his traffic lane around the end of the gate, and in so doing ran head-on into the moving train. Witness Smith, who was driving a truck and approaching the crossing from the direction opposite to that from which Bell was approaching, observed the train and Bell's car approaching the crossing and saw the gates go down when the train was 250 feet from the crossing, at which time Bell was traveling in his proper lane of the highway. The fireman, Daugherty, who was operating the locomotive at the time from its right side, stated he turned on the automatic bell and began to blow the whistle at the whistle board approximately 1,500 feet before reaching the crossing, the bell rang continuously, and the whistle blew repeatedly from then until the train passed the crossing. The crossing lights were blinking, and he could see that both gates were down until he was within 150 to 200 feet from the crossing at which point the engine obscured his view of the gate on the left side of the crossing. He immediately threw the locomotive into emergency when the engineer called, "Hold her." The engineer who was riding on the same side of the locomotive as that from which Bell's car approached, saw the car when the locomotive was approximately 250 to 300 feet from the crossing, and the car at that time was farther away from the crossing than the locomotive. He was unable to see the gates because he was on the curved side of the locomotive as it approached the crossing. When the car was within 75 to 100 feet from the crossing, he realized that it was not going to stop and he called to the fireman to put the locomotive in emergency stop. The defendant's signal inspectors and maintenance men had tested the crossing signals eight days before the accident and they were functioning properly at that time. They again tested the gates and other signals two hours after the accident and they were then operating properly.

The plaintiff's evidence tended to show that:

the defendant's train conductor was in the caboose, the last car on the train, and as the caboose crossed the crossing, he looked out the window and saw that the gate on the side from which Bell had approached was about half way up, high enough that there was room for an automobile to have passed beneath the extreme extension of the gate without striking it. Highway Trooper Duval and

Naval Investigator Powell arrived at the scene approximately two hours after the accident and observed skid marks in the north lane (Bell's proper lane) of the highway which seemed to veer to the center of the road, near the crossing. They found no scratches or marks on the gate. They made photographs of the scene of the accident at that time. They also found a gouged-out place on one of the cross-ties in the north highway lane, which they undertook to identify as having been made by the right-front wheel of Bell's vehicle from a piece of matching wood they found in the right-front wheel of his car.

■■ This evidence presented a factual situation for the jury. The applicable law is found in the Virginia highway crossing statutes, Va.Code Ann. § 56–414 (1950)[1] requiring the defendant to have its locomotive equipped with certain warning signals, and § 56–416 [2] thereof providing that if the required statutory signals are not given and an accident occurs, the comparative negligence rule is applicable. Under these statutes, if the statutory signals were not given, such failure constitutes negligence per se, and the defendant would be liable if such failure proximately contributed to the accident even though Bell may have been guilty of negligence which proximately contributed to the accident.

Negligence on the part of Bell would mitigate the damages, but not bar a recovery. If, however, the defendant gave the required statutory signals, it then became incumbent upon the plaintiff to show that the defendant was guilty of other negligence which was the *sole* proximate cause of the accident, for if the statutory signals were given, plaintiff can recover only if his decedent was free from any negligence which proximately contributed to the accident, as the doctrine of comparative negligence is only applicable where the statutory signals are not given.

■ The jury was fully instructed on the different theories of negligence involved. The jury found for the defendant. There was an abundance of credible evidence to support its finding, and we will not disturb the verdict unless there was reversible error in the trial.

The plaintiff seeks a reversal on the following grounds, which, stated in his brief, are as follows:

1. Whether under the facts of this case, the evidence of Dorothy Pete, as to prior malfunctions of the warning gate protecting the U. S. Route 13 at the grade crossing of the Pennsylvania Railroad track should have been admitted.

2. Whether under the fact (sic) of this case, the photographs marked plaintiff's Exhibits 4, 5, & 6, taken a few hours after collision, showing

1. "*Bell and whistle or horn; when sounded.*—Every railroad company shall provide each locomotive or Diesel engine passing upon its road with a bell of ordinary size and steam whistle, or horn, and such whistle or horn shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any public highway or crossing, and such bell shall be rung or whistle or horn sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require."

2. "*Effect of failure to give statutory signals.*—If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such traveler, nor for an injury to or the destruction of property in his charge, where such injury, death, or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively; but the failure of the traveler to exercise such care, may be considered in mitigation of damages."

undisturbed physical facts including skid marks of plaintiff decedent's vehicle, should have been admitted even though Naval Investigator Powell appeared in picture.

3. Whether under the facts and applicable law, the Court's charge was erroneous, misleading to the jury and prejudicial to the plaintiff.

The first ground assigned is that the court should have allowed the testimony of Dorothy Pete to go to the jury. The defendant had introduced evidence tending to show that it was highly improbable that the electrically operated gates would fail to function. Dorothy Pete's testimony was offered to rebut this evidence, but was not admitted. The testimony which she would have given was in substance:

that she lived 1,500 feet from the crossing and on prior occasions on unspecified dates, she had seen trains passing the crossing while the gates were up.

■ The plaintiff contends that the trial court erred in refusing to admit this testimony, relying primarily on Southern Ry. Co. v. Whetzel, 1933, 159 Va. 796, 167 S.E. 427 (rehearing denied March 30, 1933). In that case, witnesses had seen the crossing signals fail to operate properly 30 minutes before and immediately after the accident; there was also evidence that the signals had failed to function two weeks before the accident and several days thereafter. In the case at bar, the signals were inspected regularly and the gates and signals functioned properly eight days before the accident and two hours afterwards. Dorothy Pete's testimony was so unspecific and remote as to the time she claims she saw the gates fail to function as to be of no probative value. The facts clearly distinguish Whetzel from this case. It was not error to refuse this testimony.

■ The plaintiff also assigns as error the refusal of the court to admit in evidence certain photographs, taken some time after the accident. Naval Investigator Powell was asked to introduce in evidence photographs showing him squatting and pointing to skid marks on the surface of the road and marks on the railroad tracks. These pictures were held inadmissible as being leading. The plaintiff did not offer to introduce these exhibits by another witness. These photographs were taken some time after the collision, and the skid marks were never shown to have been made by Bell's automobile. The scene which they purported to portray was equally well depicted by other pictures which were admitted into evidence. The admissibility of photographs is largely in the discretion of the trial court. Virginian Ry. Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400, 402, 4 A.L.R.2d 1064. See City of Portsmouth v. Culpepper, 1951, 192 Va. 362, 64 S.E. 2d 799, 803; Elswick v. Charleston Transit Co., 1945, 128 W.Va. 241, 36 S. E.2d 419, 425. It was not error to refuse to admit in evidence these pictures (exhibits 4, 5, & 6).

On brief, in addition to the alleged errors of the court in refusing to admit the testimony of Dorothy Pete and the photographic exhibits (4, 5, and 6), which we hold was not error, the plaintiff makes three other objections to the court's charge; they are:

(1) that the charge was repetitious and too lengthy;

(2) that it was error to charge the jury that the defendant was presumed to be free from negligence; and

(3) that the court erred (a) in its charge relative to the duty of Bell to exercise reasonable care for his own safety; (b) in distinguishing between a half-open and a half-closed gate; and (c) in not charging the jury that there was a duty on the defendant to see that the crossing gates operated properly.

■ We consider the objections in the order named:

(1) We do not think that in this case the charge was unduly repetitive or too

lengthy. The theories of primary negli-gence, contributory negligence, and comparative negligence were involved, and it was appropriate for the court to charge the jury in detail as to these different theories of negligence, even at the risk of some repetition.

(2) With respect to the plaintiff's contention that the court erred in charging the jury that "the presumption is that the defendant railroad company was free of negligence," it is elementary that the mere occurrence of an accident raises no presumption of negligence. Griffith-Consumers Co. v. Rollings, 4 Cir., 1935, 79 F.2d 452. It is also settled that at the outset of the trial, the presumption is that due care was exercised by the defendant. Martin v. United States, 1955, 96 U.S.App.D.C. 294, 225 F.2d 945, 948; Caputo v. United States, D.C.D.N.J.1957, 157 F.Supp. 568, 569; Brooks, Adm'r v. Hufham, 1959, 200 Va. 488, 106 S.E.2d 631, 636; Yeary v. Holbrook, 1938, 171 Va. 266, 198 S.E. 441, 449; see also Sloan v. Carolina Power & Light Co., 1958, 248 N.C. 125, 102 S.E.2d 822, 827. The objection to this portion of the charge is without merit.

(3) (a) In substance, the District Judge told the jury that, notwithstanding that there were gates at the crossing, Bell was under a duty to look, and that if he saw or in the exercise of reasonable care should have seen that it was unsafe to undertake to cross the crossing and persisted in doing so in the face of such danger, he was guilty of negligence. It was not error to so charge the jury. Norfolk & W. Ry. Co. v. Wellons' Adm'r, 1930, 155 Va. 218, 154 S.E. 575, 579 (rehearing denied November 12, 1930); Norfolk & W. Ry. Co. v. Sink's Ex'r, 1916, 118 Va. 439, 87 S.E. 740, 743 (rehearing denied February 2, 1916); Washington Southern Ry. Co. v. Lacey, 1897, 94 Va. 460, 26 S.E. 834, 839.

(3) (b) We agree with the trial court that a railroad gate, partially up or down, does not constitute license to the public to enter upon the crossing without looking and listening and using reasonable care for their safety. A railroad gate suspended half-way up or half-way down at a highway crossing if seen constitutes a warning for one to approach the crossing with due care. See Norfolk & W. Ry. Co. v. Sink's Ex'r, supra.

(3) (c) The final objection is that the trial court failed to charge the jury as to the duty of the defendant to see that the crossing gates operated properly. Suffice it to say that the court fully and correctly charged the jury on this point. (Court's charge, Tr. p. 13.)

The objections to the charge that it was repetitive and too lengthy and that it was error to charge the jury that the defendant was presumed to be free from negligence are made in this court for the first time. While we have noticed these objections in this case, we emphasize that Fed.R.Civ.P. 51 requires a party to make objections to the charge before the jury retires so that the trial judge may consider them and modify the charge if the objections are found to have merit; if objections are not then made, the trial judge may assume that the parties have no objections. We are not required to consider alleged errors in the trial of a case when raised for the first time in this court, unless the failure to do so would result in a miscarriage of justice. United States v. Board of Education, 4 Cir., 1958, 253 F.2d 760, 765.

The charge was not prejudicial to the plaintiff; it was, in our opinion, fair, impartial and adequate. The clear weight of the evidence supports the finding of the jury. The judgment of the lower court will be

Affirmed.