14673

IRICK v. PEOPLES BAKING CO.

(196 S. E., 887)

*Mr. L. A. Hutson,* for appellant,

*Messrs. W. C. Ginter* and *Lide & Felder,* for respondent,

April 26, 1938.

*Per curiam.*

The plaintiff brought this action to recover damages for injuries sustained by her from the eating of cake manufactured and sold by the defendant, and which cake she claimed contained small particles of glass.

The complaint alleges that the Peoples Baking Company, a domestic corporation, operates a large bakery in Orangeburg County and makes delivery by trucks of the bread and cakes baked by it; that on or about November 14, 1936, defendant sold and delivered one of its small cakes to the plaintiff, which she purchased from its agent, the driver of one of its trucks, and which the company represented "to be one of the best cakes of that particular grade that was offered to the public by any bakery"; that she carried it to her home and at mealtime cut it for serving; that after she began eating a slice of it, her mouth, gums, and lips were badly cut and bruised by several pieces of sharp glass that had been "baked in the said cake by the defendant"; and that the injuries which she thereby sustained were due to the negligence of the company in permitting "the said glass to be baked in the said cake and sold to the plaintiff, who purchased it believing that it was safe to eat."

The answer was a general denial.

The case was tried in October, 1937, and, at the conclusion of all the testimony, the defendant moved for a directed verdict on the grounds that there was no proof of negligence "in the manufacture or in the distribution" of the cake in question, and that there was no testimony which tended to show that the "glass came out of the cake." Judge Bellinger granted the motion, and the only question presented by the appeal is whether he committed error in doing so.

Mrs. Charlie Irick, mother-in-law of the plaintiff, testified that she had been living at Rowesville, S. C., for about 18 years, and knew the defendant company and its salesman, Edward Crosland, from whom the cake was purchased; that Crosland worked for the Peoples Baking Company, going about selling bread and cakes from one of their trucks; that she saw him at Rowesville on the morning of November 14, 1936, and that he was then doing such work for the defendant, the name of this company being printed on the truck he was operating; and that she purchased at the time from Crosland for the plaintiff "a caramel cake, in a glass dish, wrapped with cellophane wrapping," and took it home with her and delivered it to her daughter-in-law, who lived with the witness.

"Q. Do you know what your daughter-in-law did with this cake after you gave it to her? A. She put it on my dining room table.

"Q. That all she did with it? A. Dinner time she had dinner with me. She sliced the cake. We started eating dinner. She finished before I did. She started eating the cake. Started to eat some and spit it out in her hand, and said 'My mouth is all cut up.'

"Q. She was eating the cake? A. Yes, sir. While she was eating the cake, she got up and walked to the window, and spit the cake out in her hand.

"Q. What did she do with the cake that she had in her hand then? A. Said 'My mouth is cut.' Her mouth was bleeding. I saw her mouth bleeding.

"Q. Did you see the extent of the cut? A. It was cut down in there, underneath the lip, several bad gashes.

"Q. What become of the glass? A. She spit the glass out in her hand, and I said 'Give it to me.' I got a spoon and put it on the sideboard. I separated the glass from the cake.

"Q. Could you have gotten that piece of glass from any other place? A. No, sir.

"Q. Wasn't it possible for your daughter-in-law to have gotten another piece of glass like that? A. No, sir. I don't think. I would not think so."

The plaintiff stated that she sent her mother-in-law down town on the morning of November 14, 1936, to purchase for the witness a caramel cake from Edward Crosland, a salesman for the Peoples Baking Company; that as far as the witness knew the trucks of this company went out directly from its plant to make sale of its cakes, etc.; that her mother-in-law brought the cake back with her and placed it upon the dining table, the plaintiff intending to have it as a dessert that day; and that after the dinner was placed on the table, the witness sliced the cake.

"Q. Who finished eating first? A. I did.

"Q. Anything happen? A. I ate a few mouthfuls, and all of a sudden I felt something in my mouth that hurt awful bad. I spit the cake out in my hand. My mouth was bleeding. Caused blood to get on the cake that I had in my mouth.

"Q. What did you do with the cake that you had in your mouth? A. I took a few pieces of glass out of it.

"Q. Did you take all of it out? A. All I could find. There was some crushed glass in my mouth.

"Q. What did you do with the crushed glass? A. I rinsed my mouth out.

"Q. What was the condition of your mouth? A. Awfully painful. Bleeding and cut up."

On cross examination, the plaintiff stated that she had cut the cake into six pieces, and that she took one of the inside pieces and removed the icing, as she did not like the filling;

that she cut the cake about ten minutes before she ate it, and did not eat any of it before dinner.

"Q. Isn't it entirely possible that in passing the plates around you got that glass in there? A. No, sir.

"Q. You had glassware there? A. Not the color of that plate."

Under the testimony above quoted, it was a question of fact for the jury as to how the particles of glass got into the cake in question—whether or not it was due to the negligence of the defendant in the making and preparation of such cake. It was testified, as is seen, that the cake reached the purchaser directly from the bakery of the defendant, wrapped in cellophane; that it was placed on the dining room table, where it was sliced by the plaintiff for eating at the midday meal; that within ten minutes after it was cut for serving, plaintiff took a mouthful or two of it, with the result that her mouth was severely cut by particles of glass; and that it was not possible that the glass got into the cake in passing the plates around at the table.

Counsel for the respondent point out that the doctrine of *res ipsa loquitur* does not prevail in this State; and that is true. It is clear, however, that the rule is not applicable under the facts disclosed by the testimony for the plaintiff. Counsel also point to certain testimony for the respondent, namely, that the glass plates used by the company, and which broke very seldom, came in contact only with the icing of the cakes, and contend that this testimony, when considered in connection with the statement made by the appellant, that she took one of the inside pieces of the cake and removed the icing therefrom, shows that there was no negligence on the part of the defendant "in the manufacture, wrapping and marketing of the cake or that the glass could have gotten into the cake at any point during the manufacture." But even if the testimony for the defendant tended to show that the company exercised due care in the making and preparation of the cake, there would

still remain, under all the testimony, a question of fact for the jury as to the defendant's alleged negligence.

On the whole question, see *Culbertson v. Coca Cola Bottling Co.,* 157 S. C., 352, 154 S. E., 424; *Tate v. Mauldin,* 157 S. C., 392, 154 S. E., 431, 433; *Minutilla v. Providence Ice Cream Co.,* 50 R. I., 43, 144 A., 884, 63 A. L. R., 334.

The following from 26 C. J., 785, is quoted with approval in *Tate v. Mauldin, supra:* "If a manufacturer of a food product disobeys the prohibition or neglects to perform the duty imposed by a pure food statute, negligence is implied from such violation or neglect, and he is liable for injuries resulting from the unwholesomeness of such food product regardless of his knowledge of its unwholesomeness." See Section 1452 of the Code of 1932.

*Delk v. Liggett & Myers Tobacco Co.,* 180 S. C., 436, 186 S. E., 383, relied on by the respondent, is not controlling, as the facts of that case easily differentiate it from the case at bar.

The judgment of the Circuit Court is reversed, and the case remanded to that Court for a new trial.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.