15020

GANTT v. COLUMBIA COCA-COLA BOTTLING CO.

(7 S. E. (2d), 641)

52

May, 1939.

*Messrs. Thomas, Cain & Black* and *Herbert & Dial,* for appellant,

*Messrs. George Bell Timmerman, C. T. Graydon* and *John Grimball,* for respondent,

February 20, 1940.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

This action relates to a certain bottle of Coca-Cola, which it is alleged contained poisonous or deleterious matter, to wit, bluestone. On or about April 2, 1933, George Bell Gantt, the respondent herein, a young man, then about eighteen years of age, purchased for immediate consumption a bottle of Coca-Cola at P. L. Shumpert's country store in Lexington County. According to the custom in such stores he waited on himself, taking the bottle from the ice box and opening it by use of the opener attached thereto. He testified that the bottle appeared to be all right, but that when he had drunk a part of its contents he experienced a burning sensation in his mouth and throat, and felt "fainty like" and became nauseated. He then brought the matter to the attention of V. V. Shumpert, who was in charge of the store. Later he was taken to physicians for treatment, one of whom testified that he "had every appearance of a person that was very sick from some acute cause"; while another said that he "didn't seem to be seriously sick and not sick at all much." At all events, the testimony by and on behalf of plaintiff is to the effect that he was thus made quite ill and that he suffered injurious consequences from such illness.

The bottle with the remainder of the liquid in it was preserved and turned over to a firm of chemists in Columbia for analysis, and as will appear from the testimony of R. M. Simpson, one of these chemists, it was found to contain copper sulphate, or copper and sulphate, which is bluestone, a compound that is not fit for human consumption but is more or less poisonous, and is used by farmers to protect their corn, wheat and oats from rust, and for other like purposes.

This action was commenced on or about September 6, 1934, to recover damages by reason of the incident aforesaid, by George Bell Gantt, by his guardian *ad litem,* as plaintiff, against Columbia Coca-Cola Bottling Company, as defendant, the same being a corporation with its principal place of business in Columbia, engaged in the business of bottling, distributing and offering for sale the widely advertised and used beverage having the trade name of "Coca-Cola". W. L. Adams was originally also named as defendant, and the suit was first commenced in Aiken County, but the venue was afterwards changed to Richland County and W. L. Adams was dropped as a party defendant.

The complaint herein alleges that the defendant company puts up Coca-Cola in sealed bottles of uniform style, advertising the same to the public as being free of deleterious or harmful ingredients, and as palatable, nutritious, wholesome and invigorating. And it is further alleged that this bottle of Coca-Cola was bottled by the defendant company and that the same contained bluestone or some similar solution or ingredient that was harmful and poisonous, and that the plaintiff purchased and drank same and was thereby made dangerously ill to his great damage; and that his injuries were due to and caused by the negligence and willfulness of the defendant company in bottling the Coca-Cola with bluestone mixed therein; in failing to use proper precaution to prevent such deleterious, harmful and poisonous substance from getting into the Coca-Cola; in failing properly to protect such Coca-Cola from contamination after it was bottled and before it was sold; in failing properly to inspect such Coca-Cola immediately before putting it on the market; etc.; etc. The defendant answered denying all the material allegations of the complaint.

The cause came on for trial at a term of the Court of Common Pleas for Richland County before Hon. G. Duncan Bellinger, presiding Judge, and a jury. The presiding Judge overruled the motions of defendant, which were timely made, for a nonsuit and for a directed verdict; ex-

cept for willfulness, since he charged the jury that there was no evidence upon which punitive damages could be found. The jury rendered a verdict in favor of plaintiff in the sum of $2,000.00 actual damages, and the Court refused defendant's motion for a new trial by his order dated May 30, 1939; and the cause comes before this Court upon an appeal from the judgment entered in favor of plaintiff.

The primary question involved in this appeal is: Did the trial Judge err in refusing to direct a verdict for the defendant, in that: (1) There was no evidence from which the jury could reasonably conclude that the bottle in question had actually been put out by the defendant company, or if so, that the same contained the deleterious matter at the time it was sold by defendant company; and (2) there was no evidence from which the jury could reasonably conclude that the defendant company was negligent?

With reference to Subdivision (1), we are of opinion that the evidence was quite sufficient to warrant the submission of the cause to the jury. There was testimony to the effect that the Coca-Cola in question was purchased by Mr. Shumpert, owner of the store, from the Salley Coca-Cola Bottling Company, through its agent, W. L. Adams, and that the Salley Coca-Cola Bottling Company purchased its supply of Coca-Cola from time to time from the defendant herein, Columbia Coca-Cola Bottling Company, its operations being in the territory supplied from the defendant company's plant. The evidence also showed that this particular bottle itself (considered apart from its alleged contents) originally belonged to the defendant company, having the name "Columbia" thereon, although there was testimony that the empty bottles of various companies sometimes become exchanged through error. On the other hand, in behalf of the defendant company there was testimony to the effect that its bottling plant is and was at the time in question modern, up-to-date, and efficient in every respect, being equipped with the latest improved machinery; and that the bottling process, including the most thorough

cleansing of the bottles, as well as the filling thereof, is such an ingenious and scientific mechanical process as to eliminate the possibility, or at least the probability, of error. It also appeared from the testimony that a bottle of Coca-Cola may be readily uncapped and re-capped, a matter over which the defendant could have no control after the bottle left its plant. Moreover, there was evidence to the effect that bluestone is not, and never has been, used in any way in connection with the defendant's bottling process or on its premises. Without going into further detail as to the testimony offered by the respective parties, it seems to us that although the inferences which might be drawn from the evidence were quite conflicting, the case was clearly one for the jury on this phase of the motion.

Was the evidence of negligence sufficient to take the case to the jury? We have examined the entire record with painstaking care, and we do not hesitate to say that apart from the application of the Pure Food Statute. Section 1452, Code 1932, there is not a vestige of evidence of negligence to be found in the case, and that but for this statute a verdict should have been directed for the defendant company. The plaintiff in making out his case does not even attempt to adduce any evidence, circumstantial or direct, tending to show negligence, apart from the statute. The defendant offered affirmative evidence as to the character of the bottling plant, as above set forth, and also testimony tending to show that the same was operated with all due care and caution; and, as already stated, that bluestone was not used in any way in or about the plant. It was brought out on cross examination of the manager that the alkaline washing solution used in cleansing the bottles was a caustic preparation, and it was intimated argumentatively that this might have contained, or been related in some way to, bluestone; but the same chemist who analyzed, or assisted in analyzing, the Coca-Cola involved in this case testified directly without contradiction that there is no relationship between bluestone and caustic solution of soda, and that they are "two different things." We

repeat, therefore, that our conclusion is that except for the application of the Pure Food Statute there was no evidence of negligence for the jury.

However, the Court correctly declined to direct a verdict, in that, Section 1452, Code 1932, is applicable to the case at bar, for the reason that the statute makes it unlawful and a criminal offense for any person to manufacture or sell, or offer for sale, any article of food "if it contain any added poisonous or other added deleterious ingredient, which may render such article injurious to health." And it is further provided in this section that non-alcoholic drinks shall be deemed adulterated if they contain any "compound of copper." Moreover neither knowledge of the contamination nor negligence in fact is a material element of the offense. As we construe the complaint herein it charges a violation of this section. If, therefore, it is found from the preponderance of the evidence that the bottle of Coca-Cola in question was bottled and sold by the defendant company, and that it contained at the time of the sale and delivery thereof by the company the alleged poisonous or deleterious matter, this would be a violation of the statute, and therefore, negligence *per se*. It then follows that evidence tending to show a violation of the statute, or negligence *per se,* would require the submission of the case to the jury, so far as negligence is concerned, although there was no other evidence of negligence, either direct or circumstantial.

But it is earnestly argued by counsel for appellant that the statute has no application here because not pleaded, and also because the statute, if properly construed, does not relieve the plaintiff from the necessity of proving negligence otherwise. It is true that the statute was not pleaded in terms, but the Court is required to take notice of the statutes of the State, whether specifically mentioned or not, if the allegations of fact bring the case within the provisions thereof. Hence we think this complaint may be liberally construed as charging a violation of the terms of

the statute, as was held with reference to the complaint in the case of *Hollis v. Armour & Co.,* 190 S. C., 170, 2 S. E. (2d), 681.

In the case of *Guyton v. S. H. Kress & Co.,* 191 S. C., 530, 5 S. E. (2d), 295, which related to a bottle of finger-nail polish, the Court observed that the Pure Food Statute (if it could be held to cover such an article) was not pleaded by the plaintiff or relied on in the trial of the case; and furthermore, that the record for appeal did not disclose that the question was made in the Court below or passed upon by that Court. Here, however, the question was in fact made in the Court below, for Judge Bellinger properly charged the jury with regard to the provisions of the statute, at the request of plaintiff's counsel. We do not think the case just cited can be deemed in point or inconsistent with the view we have above expressed.

With reference to the position of appellant's counsel, which is in effect that a violation of the statute cannot be deemed negligence *per se* so as to authorize the submission of the case to the jury without other evidence of negligence, we find that this Court has held to the contrary in the various cases in point commencing with the leading case of *Tate v. Mauldin,* 157 S. C., 392, 154 S. E., 431, 433, hereinafter referred to as the *Tate case.* This opinion, which was delivered by Mr. Justice Blease, considers the effect of the statute in detail, and quotes with approval the following clear and unmistakable language: "If a manufacturer of a food product disobeys the prohibition or neglects to perform the duty imposed by a pure food statute, negligence is implied from such violation or neglect, and he is liable for injuries resulting from the unwholesomeness of such food product regardless of his knowledge of its unwholesomeness." 26 C. J., 785. It may be observed that this case was a Coca-Cola case. See also *Culbertson v. Coca-Cola Co.,* 157 S. C., 352, 154 S. E., 424; *Burnette v. Augusta Coca-Cola Bottling Co.,* 157 S. C., 359; 154 S. E., 645; (it being noted that these two important cases and the *Tate case* are all in

the same volume of our reports); *Irick v. Peoples Baking Co.,* 187 S. C., 238, 196 S. E., 887; *Hollis v. Armour & Co.,* 190 S. C., 170, 2 S. E. (2d), 681, *supra; Delk v. Liggett & Myers Tobacco Co.,* 180 S. C., 436, 186 S. E., 383; and *Floyd v. Florence Nehi Bottling Co.,* 188 S. C., 98, 198 S. E., 161, 162.

The last case cited expressly approves the *Tate case,* the opinion quoting, among other things, the same paragraph that we have above set forth, and goes on to say: "It was likewise held in the *Tate case,* and later approved in the *Delk case,* that the Pure Food and Drugs Act, Code, 1932, § 1452, having been violated by the sale of unwholesome foods and beverages, such violation was *prima facie* evidence of negligence." We also refer to the concurring opinion of Mr. Justice Carter in the *Tate case,* wherein he expressly calls attention to the fact that testimony tending to show the violation of the Pure Food Statute "was sufficient to take the case to the jury on the question of such alleged negligence, independent of any further showing," for such violation of the law "constitutes negligence *per se.*" He also makes the same observations in his dissenting opinion in the *Burnette case, supra,* his dissent being based upon the view that the jury might have gotten the impression from the trial Judge's charge in that case, although perhaps not so intended, that in addition to the violation of the statute it was necessary for the plaintiff to "name some act of negligence."

Since our own cases are so uniformly to the effect that violation of the statute is negligence *per se,* it is unnecessary for us to consider the decisions of other states. We may add, however, that while they are not entirely uniform, it appears that the weight of authority is in accord with our own holding to the effect that the violation of the Pure Food Statute amounts to negligence *per se.* See 22 American Jurisprudence, 882.

Furthermore, the effect of the rule as stated is well explained as follows by the Court of Appeals of Georgia, in the rather recent case of *Southern Grocery Stores v. Done-*

*hoo,* 59 Ga. App., 212, 200 S. E., 335, 337: "As to civil actions, the only effect of the Pure-Food Act is that whereas before its passage an action for damages resulting from negligence could be sustained only by allegation and proof of such negligence as a matter of fact, that is, according to the standard of ordinary prudence as applied to the circumstances, the plaintiff may now show negligence as a matter of law by establishing a breach of the statutory duty; or he may rely on both classes of negligence, according to the facts. In other words, the passage of this statute did not affect the nature or basis of the cause of action, but related only to the standard of care by which negligence may be determined. * * * In a civil case of this kind the plaintiff is not required to establish more, on the issue of negligence, than a violation of the statute, and from the terms of the Pure-Food Act (§ 42-109(7)), it is clearly apparent that it does not include either knowledge of the impurity of the food or negligence in fact as an ingredient of the offense of selling adulterated food, as therein defined."

The record shows that Judge Bellinger in the course of his discussion with counsel of the law involved herein stated that he found it difficult to harmonize the various decisions of this Court, for while they appear to hold that the negligence *per se* rule applies, they go further and seem to indicate that possibly there must also be some other evidence of negligence. While we think that upon a close analysis of our previous decisions on this subject it will be found that they are sound and correct in result, yet we agree with the learned trial Judge that perhaps they are not all entirely clear in respect to the point mentioned by him. But we believe that whatever confusion may exist is due mainly to the matter of emphasis; that is to say, we have heretofore overemphasized the rather meager circumstantial evidence sometimes relied on by a plaintiff to avoid resort to the spurious maxim of *res ipsa loquitur,* while we have somewhat incidentally mentioned that a violation of the statute was negligence *per se.*

In the hope that we may clarify the law on this subject we desire to state the following controlling principles, which, applying directly to the instant case, may serve as a guide in other like cases:

(1) The foundation of liability is negligence. We hold in accordance with the *Tate case* that this liability "is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape."

(2) The doctrine of *res ipsa loquitur,* as this Court has repeatedly held, is not a part of the law of this State; and hence is wholly irrelevant. It scarcely needs to be added, however, that obviously this does not mean that negligence may not be established by circumstantial evidence as well as direct evidence.

(3) The violation of the Pure Food Statute, Section 1452, is negligence *per se,* and hence sufficient to require the submission of the question of negligence to the jury, even where there is no other evidence of negligence. But of course, as was said by the Georgia Court of Appeals in the excerpt above quoted, this does not preclude a plaintiff from also introducing other evidence of negligence. And in this connection we call attention to the following appropriate language from Mr. Justice Carter's concurring opinion in the *Tate case:* "While I think the trial Judge properly permitted testimony to be introduced by the defendant, by way of defense, to show that his plant was operated under modern methods and to show that precaution was taken to prevent any foreign substance from getting into the drinks, and also that the trial Judge properly admitted testimony offered by or on behalf of the plaintiff to controvert the contention of the defendant, still testimony to that effect by or on behalf of the plaintiff was not necessary to take the case to the jury on the question of negligence charged against the defendant in manufacturing and placing on the market the poisonous drink in question."

While our conclusion, therefore, is that the exceptions charging Judge Bellinger with error in refusing nonsuit and

direction of verdict should be overruled, and incidentally also the exception to his charge relating to the Pure Food Statute, we are of opinion that he was in error in the exclusion of certain testimony, and that hence Exception No. 1 should be sustained and a new trial ordered with reference to actual damages.

In order that the matter may be clearly understood we quote the following from the Transcript of Record, which occurred in the course of the examination of R. R. Bruner, manager of the bottling plant of the defendant company, and a witness sworn in its behalf:

"Q. In the entire time you have been connected with the Columbia Coca-Cola Bottling Company, have you ever had any complaint, but this time, of there being bluestone in any Coca-Cola?

"Mr. Graydon: We object to that. .

"The Court: Yes, sir; it isn't a question of that.

"Mr. Herbert: Your Honor, counsel might well argue that the bluestone came in it from a barrel of the syrup that was shipped here from elsewhere, and it would show a general condition. Now, it does seem to me that this would be responsive to any kind of argument of that kind.

"The Court: No, sir; no more than I would let them go into that. If I let the bars down, I would be letting the bars down as to the substance getting into others.

"Mr. Herbert: Would your Honor permit me to ask him if at that time he had any complaints of bluestone on the part of people drinking Coca-Cola?

"Mr. Graydon: I don't think that would be proper, if your Honor pleases, unless your Honor wants to go into all of the cases that the Coca-Cola Company has had all over the country.

"The Court: I have just said that I would sustain your objection." ,

In the North Carolina case of *Perry v. Kelford Coca-Cola Bottling Company,* 196 N. C., 175, 145 S. E., 14, 15, the Supreme Court of that State held that evidence in behalf of

plaintiff that foreign substances were found in other bottles of beverage bottled and sold by defendant at about the same time that plaintiff was injured was competent to show negligence on the part of the defendant. The Court said: "The evidence offered by the defendant in the case at bar tended to show that the defendant operates a modern and up-to-date plant, but the plaintiff attempted to show that the defendant had placed upon the market 'at about the time plaintiff was injured' bottles of Coca-Cola that contained foreign substances. This was a relevant circumstance upon the issue of negligence to be considered by the jury together with all the other evidence in the case. In both the *Dail* [*Dail v Taylor*, 151 N. C., 284, 66 S. E., 135, 28 L. R. A. (N. S.), 949 and *Cashwell cases* [*Cashwell v. Bottling Works*, 174 N. C., 324, 93 S. E., 901], involving injury from the explosion of a bottle, this Court held that it was competent to show the explosion of other bottles, placed upon the market by the defendant, upon the question of negligence, and no sound reason occurs to us why the plaintiff should not be entitled to show, as a circumstance to be considered by the jury, that other bottles of the beverage manufactured and sold by the defendant, 'at about the same time' plaintiff was injured, contained harmful substances."

There are several other North Carolina cases to the same effect. In the case of *Enloe v. Charlotte Coca-Cola Bottling Co.*, 208 N. C., 305, 180 S. E., 582, 584, that Court said: "That as tending to establish the principal fact in issue, to wit, the alleged actionable negligence of the defendant, it is competent for the plaintiff to show that like products manufactured under substantially similar conditions and sold by the defendant 'at about the same time' contained foreign or deleterious substances."

In the very recent North Carolina case of *Evans v. Charlotte Pepsi-Cola Bottling Co.*, 216 N. C., 716, 6 S. E. (2d), 510, decided January 3, 1940, the same principle was reaffirmed. It should be stated that it was held in this case that the demurrer to the evidence should have been sus-

tained, in the absence of evidence that any other like products manufactured under substantially similar conditions and sold about the same time contained deleterious substances, or evidence of defect in machinery or failure to inspect bottled beverages. But neither in this case nor in any of the other North Carolina cases above cited is any reference made to a statute such as our Pure Food Statute, and hence the effect of such a statute, if it exists in North Carolina, is not considered or decided.

In the *Iowa case* of *Davis v. Van Camp Packing Co.*, 189 Iowa, 775, 176 N. W., 382, 17 A. L. R., 649, it was held that it was error to exclude evidence of other defective cans of beans purchased out of the same consignment or batch. See also 22 American Jurisprudence, 899.

A somewhat similar question in principle was involved in our own case of *Brown v. Southern Ry. Co.*, 111 S. C., 140, 96 S. E., 701, 703, where the Court said: "The circumstances that other vehicles of like character at the same place, within a reasonable time, had met with the same obstruction that hindered in the instant case is competent. 10 R. C. L., page 940."

Manifestly the admission of testimony of this character should be hedged about with much care, but even if the rule be stated in less broad and comprehensive terms than those used by the North Carolina Supreme Court in the cases above cited, we·think it would have been entirely relevant for the plaintiff in the case at bar to offer evidence, provided of course the facts warranted it, that at about the same time as that of the incident in question some other bottle or bottles of Coca-Cola put out by the defendant company were found to contain bluestone. And by the same token we see no good reason why it would not have been equally relevant in behalf of the defendant company for it to offer evidence, if warranted by the facts, tending to show that the other Coca-Cola bottled by it at about that time was free from bluestone. Hence testimony that no charge or complaint had ever been made that blue-

stone had been discovered in Coca-Cola bottled by this company, except in this particular case, would have been a supporting and relevant circumstance to that end. Applying the rule of logic (or its equivalent here, common sense), which really determines the matter of relevancy, such evidence would have at least some probative value to be considered by the jury, especially in the light of the testimony that the bottling of Coca-Cola by the defendant company is a mass production—84 bottles or more a minute; and hence that a great number of bottles might go through the same process at the same time and under the same conditions.

Of course, testimony of this kind must be confined to the *defendant company done,* and cannot be extended to instances involving any other manufacturer or bottler of Coca-Cola.

While the *Tate case* is not directly in point here, it will be observed that it was held in this case that testimony respecting conditions in the bottling plant eighteen months before and one year after the purchase of the Coca-Cola complained of was properly admitted in the discretion of the trial Judge; and testimony of this kind is slightly analogous to that now under discussion. Moreover, it is true that the admission of any of this class of testimony is usually regarded as discretionary. But in view of the necessarily circumstantial character of much of the evidence offered in the instant case by each of the parties, we are of opinion that the exclusion of the proffered testimony was so definitely erroneous as to necessitate a new trial.

We do not think any of the other exceptions require discussion. It is our conclusion that Exception No. 1 should be sustained and that all of the other exceptions should be overruled. As we have heretofore stated, Judge Bellinger directed a verdict as to punitive damages, that is to say, he peremptorily charged the jury that they were to consider the question of whether or not the plaintiff was entitled to actual damages only, and hence elimi-

nated any charge of willfulness or recklessness; and there being no appeal by plaintiff that issue is out of the case.

The judgment of the Circuit Court is reversed and the case remanded for a new trial as to actual damages.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.