Bjorn **KLEVELAND**, Libelant-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee,

v.

**AGMARINE CONTRACTING CO.**, Inc., Respondent-Impleaded.

No. 430, Docket 28442.

United States Court of Appeals Second Circuit.

Argued April 7, 1965.

Decided May 11, 1965.

Harry L. Hall, Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Morton S. Hollander, Chief, Appellate Section, Civil Division, Dept. of Justice, Robert M. Morgenthau, U. S. Atty., S.D.N.Y., Louis E. Greco, Atty. in Charge, New York Office, Admiralty and Shipping Section, Dept. of Justice, Philip A. Berns, Atty., Admiralty and Shipping Section, Dept. of Justice, on the brief), for respondent-appellee.

Before WATERMAN, FRIENDLY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Bjorn Kleveland, a ship cleaner employed by Agmarine Contracting Co., was injured on October 11, 1960, when he fell from a ladder—a rung of which had suddenly parted from the uprights—in No. 4 hold of the SS Thomas F. Meagher. This vessel was constructed in 1944. It was deactivated from service in 1952, and became a part of the Hudson River reserve or "moth ball" fleet of the United States Maritime Administration. The Meagher continued in a deactivated status and was not in use between 1952 and the time of the accident. On October 5, after a visual inspection by Reserve Fleet personnel, the Meagher was towed from Tonking Cove, New York to Weehawken, New Jersey to be cleaned and otherwise prepared by Agmarine for grain storage. On October 6, after the ship arrived at Weehawken and prior to the accident, a representative of the Maritime Administration, the Master of the vessel and a representative of the National Cargo Bureau visually inspected the vessel, including the ladder in No. 4 hold. The weight bearing ability of each rung was tested to the extent that each of the three inspectors went down and up the ladder. No weakness or defect was reported other than light rust.

On October 10, Agmarine cleaning crews commenced work, which consisted of cleaning and fumigating, and the removal of wood planking from the holds by use of block and tackle. These operations were performed under the direction, supervision and control of a fore-

Max Cohen, New York City (Benjamin B. Sterling, New York City, on the brief), for libelant-appellant.

man of Agmarine. On the day of the accident, Kleveland and twelve of his fellow employees used the after ladder to leave and re-enter the hold. Prior to the accident no untoward incidents occurred. At about 3:30 p. m. the libelant ascended the ladder, grasping the rungs hand-over-hand as it was not feasible to take hold of the uprights, to leave the place where the work was being done, for a coffee break. The fourth rung from the top pulled off in his hand and he fell about fifteen feet to the floor of the hold, as a result of which he suffered serious physical injuries.

Kleveland appeals from a decree in admiralty dismissing the libel on the grounds that no warranty of seaworthiness was extended to libelant by the United States and that libelant had failed to sustain his burden of proving that the United States was negligent and that such negligence was the proximate cause of his injuries.

■ Since the Meagher was a "dead ship," it was not a vessel in navigation. It follows that there was no warranty of the ship's seaworthiness. Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961).

The Government does not deny its liability if the accident was due to negligence in the inspection it carried out on October 6. At first blush, this concession may appear generous in the light of West v. United States, 361 U.S. 118, 123–124, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), where the Supreme Court held that a shipowner was not under a general duty to use due care to make a laid-up ship safe for the repairmen of a contractor who had taken control, and the absence of any claim that the defect was found but not reported. However, in West the injury stemmed from a defect in the very equipment the contractor was hired to check and repair in his overhaul of the ship, while there is no indication that Agmarine was employed to do more than clean the ship and prepare it for grain storage. Also in West the Court said, p. 124, 80 S.Ct. p. 193,

" * * * there might be instances of hidden or inherent defects, sometimes called 'latent,' that would make the owner guilty of negligence, even though he had no control of the repairs * * *."

While the Supreme Court did not specifically discuss the point in Roper v. United States, supra, the opinion of the Court of Appeals, whose decision it affirmed, 282 F.2d 413, 417 (4th Cir. 1960), said,

"Of course, the United States was under a duty to exercise care to see that such things as the vessel's hatch covers and ladders, with which the stevedores must necessarily work, were reasonably safe for use."

The question presented is whether the United States could be chargeable with a violation of that duty under the circumstances here.

■ The conduct of the parties itself indicates that the United States took responsibility for making a check of the ship's accessories after years of disuse, and it is liable for failure to use due care in this although not for defects produced by Agmarine's own work. Compare Albanese v. N. V. Nederl. Amerik Stoomv. Maats., 346 F.2d 481 (2d Cir. 1965).

■ To recover for negligence, libelant must show that his injury resulted from a defect in the ladder which a reasonable inspection by the Government would have revealed. Filipek v. Moore-McCormack Lines, 258 F.2d 734 (2d Cir. 1958); Restatement, Torts, § 300, comment c (1934). Proof of the cause of the breaking of the rung, as to which the judge found the evidence insufficient, was undeniably relevant to that issue. We are constrained to reverse because we believe the judge erroneously prevented Kleveland from offering material evidence on this critical question.

■■ Kleveland's counsel presented his expert, Priscu, with a photograph of a broken rung and asked for his conclusion regarding the nature of the weld and the cause of the rung's sudden col-

lapse. Priscu was not allowed to answer because the Government had already objected successfully to the admission of the photograph (exhibit 10) as a picture of the actual rung, on the ground that Berke, the qualifying witness, did not see the photographer take the picture. The witness qualifying a photograph, however, does not need to be the photographer or see the picture taken. It is only necessary that he recognize and identify the object depicted and testify that the photograph fairly and correctly represents it. McCormick, Evidence § 181, at 387 (1954). The record reveals that Berke, who stood close to Kleveland after he fell with the rung still in his hand, testified when shown exhibit 10, "Yes, that is the piece of iron he had in his hand when he fell down." Berke said that he had seen it when it was only a foot or two away from him, adding, "I seen it with my own eyes." The court's exclusion of Priscu's evidence was clearly based on the misapprehension that there

was no evidence to prove that the rung in the picture was the rung in question.[1] Yet Berke's testimony explicitly stated just that.

There can be no question that proof of the cause of the break was vital to Kleveland's case. He could hardly prove that the accident was caused by a defect that a reasonable inspection would have discovered without first proving that the cause was in fact a particular discoverable defect. If Priscu had been allowed to testify from the photographs that the accident was caused by a defect thus discoverable, Kleveland's case would have been carried a long way forward.

If the libelant offers evidence satisfying the court that there was a latent or hidden defect, it must then decide whether the inspection of the ladder by the shipowner was, under those circumstances, sufficient and adequate to meet the standard of due care, and whether or not such an inspection would have disclosed the defect.

1. The failure to ask Berke whether the photograph, Exhibit 10, and accompanying photographs, were fair and accurate representations may well have happened because the objection to their admission and the colloquy between counsel and the court concerned only Berke's qualification as a witness. The ruling of the court while Berke was still on the stand was as follows:

"The Court: * * * They will be received for whatever purpose they may serve. It is not particularly dispositive of the issues we have before us.

"Mr. Hopkins: Whatever they are worth.

"The Court: Whatever purpose they will serve. In any event, they are similar to the rungs which were on the ladder."

This ruling did not clearly sustain the Government's objection, and Exhibit 10 for identification was apparently made a full exhibit. It was not until later after Berke had left and another witness, Priscu, was on the stand that the Government again objected to the use of Exhibit 10.

"Mr. Hopkins: Now, here we go again, your Honor. This has not been established to be a picture of the rung. There has been an absence of proof. It is totally irrelevant and incompetent of this witness to say what the condition of this object on this photograph,

which is Exhibit 10, represents without a foundation laid to the effect that it is a photograph of the rung in question.

"That photograph was admitted on your Honor's statement as showing a similar rung.

"Mr. Sterling: Your Honor, Mr. Berke testified that this was the rung.

"Mr. Hopkins: Yes, and the Judge said that it would be admitted as a photograph of a similar rung because we proved conclusively on cross-examination that he did not have the slightest idea what this object was.

"The Court: I think that is true. We are getting into an area here that is rather difficult. It has not been established that this was the rung. It was Mr. Berke's testimony that he had seen a photographer in the area at the time immediately after the accident, I believe, taking some picture, or someone there for that purpose, but this testimony is not direct, that this is the rung."

After appellant's counsel pointed out that Berke had testified that he had been in a position to see the rung in Kleveland's hand when he fell, the court said, "Notwithstanding that, there is no evidence that this is the exact rung." There was further brief colloquy and the court sustained the Government's objection.

On remand the trial court should permit the introduction of evidence, including exhibit 10 (unless some valid objection to it exists), on the issue whether the accident was caused by an ascertainable defect in the ladder. If Kleveland shows that it was so caused, then the court must determine what constituted a reasonable inspection under the circumstances. If such an inspection would not have led to discovery of the defect, then the Government is not liable. But if the defect was discoverable by a reasonable inspection, which the Government failed to perform or performed improperly, then the court must find for the libelant.

The case is reversed and remanded for a new trial.