Terry W. CARSON, Plaintiff,

v.

**SQUIRREL INN CORPORATION,**
Defendant.

Civ. A. No. 68–353.

United States District Court
D. South Carolina,
Charleston Division.

April 24, 1969.

James P. Mozingo, III, D. Kenneth Baker, and John R. Etheridge, Jr., Darlington, S. C., for plaintiff.

Joseph R. Young, Charleston, S. C., and Sidney B. Jones, Jr., Summerville, S. C., for defendant.

### ORDER

HEMPHILL, District Judge.

Plaintiff, seeking relief from an adverse jury verdict, moves for a judgment notwithstanding the verdict, or, in the alternative for a new trial. He sets forth thirteen grounds upon which he insists a judgment n. o. v. or new trial should be granted, argues five, which this court reviews.

### GROUNDS 3

THE ONLY REASONABLE INFERENCE TO BE DRAWN FROM THE EVIDENCE IS THAT DEFENDANT WAS NEGLIGENT AND THAT SUCH CONDUCT PROXIMATELY CAUSED PLAINTIFF'S INJURY.

Effectively, this projects the motion for a directed verdict again before the court as a motion for judgment notwithstanding the verdict. This court's authority and limitations are set forth in Snead v. New York Central Railroad, 216 F.2d 169, 172 (4th Cir. 1954):

> "It is well settled that on a motion for a directed verdict or on motion for judgment n. o. v. based on such motion, the evidence must be considered in the light most favorable to the party against whom the directed verdict or the judgment n. o. v. is asked, that any conflict in evidence must be resolved in his favor and that every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn." Burcham v. J. P. Stevens & Co., 4 Cir., 209 F.2d 35, 37. The rule differs from that applicable on motions for new trial, where the judge may and should set aside the verdict and grant a new trial where the verdict is contrary to the weight of the evidence, or in his opinion is based upon evidence that is false or where he thinks such action necessary to prevent a miscarriage of justice.

The review of the evidence by the court is, therefore, in the light most favorable to defendant.

Plaintiff and his wife, on their honeymoon, travelled south to Florida by automobile. En route, on April 11, 1967, they stopped at Squirrel Inn at Summerville, South Carolina. They were assigned room fourteen, which had twin beds, one dresser, lamps and other furniture. At or near 10:00 p. m. o'clock they retired. During the night he did not get out of bed. Early on the morning of April 12, 1967, he fell to the floor,[1] striking his head and shoulders. He claimed immediate and excruciating pain, of which he continues to complain.

Mrs. Carson generally recites the same chronology. She stated they were tired on arrival, went to bed early and slept. Her first awareness was when she heard what she thought was a jet plane, early next morning, after which she heard a noise that sounded like a crash. She remarked about the noise to her husband as she turned toward his bed, was surprised to find the bed empty. She jumped out of bed and ran around his bed to find him lying on the floor in an apparent state of shock. She ran to summon help.

When Mrs. Carson returned to the room she for the first time noticed that the mattress was "hanging over" or awry, and that a bed board[2] was under

---

1. Plaintiff was uncertain as to how and when he fell, claims neither awakening or consciousness prior to the fall.

2. There is no dispute but that a "bed board" as used here is the kind inserted under a mattress to make a hard bed, usually used by those suffering from back ailments.

the mattress. There is no dispute that the board had been placed there for a preceding guest of the motel. Mrs. Carson described it as a thin board, like plywood, and shiny. She testified it looked like a makeshift board and a corner had been cut away.

Plaintiff consulted a physician and had various tests at Summerville (not material to this discussion) and· was advised to wait before travelling again. He remained over another night, in the same room [3], before continuing his journey to Florida.

■■■ The court finds an absence of direct proof that the bed board was responsible for the fall from the bed. To be sure, the object was there, but that alone is insufficient. The Doctrine of Res Ipsa Loquitur does not prevail in South Carolina. McLain v. Carolina Power & Light Co., 286 F.2d 816, cert. den. 82 S.Ct. 403, 368 U.S. 959, 7 L.Ed.2d 390. Heath v. Town of Darlington, 175 S.C. 27, 177 S.E. 894; Irick v. Peoples Baking Co., 187 S.C. 238, 196 S.E. 887; Gilland v. Peter's Dry Cleaning Co., 195 S.C. 417, 11 S.E.2d 857. Therefore the fact of the injury indicates negligence. It is true that negligence may be established by circumstantial evidence in South Carolina, Gantt v. Columbia Coca-Cola Bottling Co., 193 S.C. 51, 7 S.E.2d 641, 127 A.L.R. 1185, but on the motion for judgment n. o. v. this court finds an insufficiency of circumstantial evidence on which to grant the motion.

## GROUNDS 7

THE VERDICT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE.

■■■ Adams v. Duffie, 244 S.C. 365, 137 S.E.2d 276, repeats the rule stated in *Snead,* supra:

It is well settled in this state that the trial judge has the authority and responsibility to grant a new trial when, in his judgment, the verdict of the jury is contrary to the fair pre-

ponderance of the evidence and that an order granting a new trial on such ground is not appealable.

The burden of proof is on the plaintiff to establish negligence on the part of defendant and that such negligence is the proximate cause of plaintiff's injury. Perry v. Carolina Theater, 180 S.C. 130, 185 S.E. 184; Delk v. Liggett & Myers Tobacco Co., 180 S.C. 436, 186 S.E. 383; Carter v. Columbia & G. R. Co., 19 S.C. 20, 45 Am.Rep. 754.

■■■ Under South Carolina law, an innkeeper is not an insurer of the safety of his guest. Darter v. Greenville Community Hotel Corp., 194 F.Supp. 642, 301 F.2d 70, 77 (4th Cir. 1962), shows the adoption of the general rule [citing 28 Am.Jur. 578, 579]:

The law imposes a duty on an innkeeper or similar proprietor to furnish safe premises to his patrons * * *. Generally, however, his duties and liabilities in this respect are not those of an insurer, and extend only to the exercise of reasonable care; which must be determined from the circumstances. The proprietor's liability in such cases rests upon the same principles applicable in other cases where persons come upon the premises at the invitation of the owner or occupant and are injured in consequence of the dangerous condition of the premises. * * *

Unless there was something inherently dangerous or deceptive about the bed as made up with the bed board, or some hidden or latent danger known to the innkeeper but unknown to the guest, there was no duty on the part of Squirrel Inn to warn plaintiff. Wainwright v. Thomas, 250 F.Supp. 963 (D.C.S.C. 1966).[4] Plaintiff must show the innkeeper failed to exercise reasonable care for the safety of the guest, in order for the guest to recover for alleged injuries. Hadden v. McLauchlin, 237 F.Supp. 209 (D.C.S.C.1965).

---

3. There is dispute as to whether the bed board was removed or not.

4. This case also reaffirms the South Carolina rejection of res ipsa loquitur, in its application to innkeeper.

**1044**

The weight of the evidence is not such as to justify a new trial. The jury could well have believed that plaintiff merely fell out of bed. They could have believed he pulled the mattress awry, if it was in fact awry, when he fell. Additionally, the bed board was apparently not discovered until after Mrs. Carson returned to her room. There is little, if any, evidence the bed board caused or contributed to the fall.

Accordingly, the motion for a new trial is denied.

### GROUNDS 11

THE COURT ERRED IN ALLOWING ONE WHITE MALE MEMBER OF THE JURY TO TAKE NOTES DURING THE ENTIRE TRIAL.

Counsel for respective parties agree that one of the jurors was taking notes. This was not called to the attention of the trial judge. No motion was made thereabout. No effort was made to have the court take charge, or preserve, the notes to see whether the juror was making notes of the calculation of damages, on some other issue, or as to all the issues on trial.

The taking of notes by a member, or members, of a trial jury, does not, ipso facto, introduce a facet of injustice into the trial. As noted by Mr. Justice Black in United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8:

> Juries fairly chosen from different walks of life bring into the jury box a variety of different experiences, feelings, intuitions and habits. Such juries may reach completely different conclusions than would be reached by specialists in any single field * * *. On many occasions, fully known to the Founders of this country, jurors—plain people—have manfully stood up in defense of liberty against the importunities of judges and despite prevailing hysteria and prejudices.

One wonders if the trial judge is to decide whether a juror can give the best service, attention, or decision with or without notes. Absent some showing of prejudice, bias or injustice, note taking should be permitted where no interference with orderly process is involved.

As this court clings to the philosophy of *stare decisis*, it seeks guidance in those deliberations reflected in reported cases. Unfortunately, few, if any reported cases [5] reflect the issue as having been raised on the civil side of the court. On the criminal side of the court the question has been treated infrequently. The general rule in South Carolina is that when it appears that anything has occurred which may have improperly influenced the action of the jury, the accused in a criminal prosecution should be granted a new trial, even though he may appear guilty, since his guilt has not been ascertained in a manner prescribed by law.[6] Justice would not suffer by the application of this general proposition to civil cases.

South Carolina, in an early case, ruled in effect that the complaining party must show prejudice. State v. Tindall, 10 Rich. 212, 44 S.C.Law 212. There a defendant was convicted of murder. After the conviction it was discovered that the testimony taken at the coroner's inquest was accidently sent to the jury room with other papers such as the indictment. A new trial was refused, the court reasoning that (1) there was no competent evidence that the inquest was read, and (2) that if read it would add nothing to the strength of the evidence on which the jury could base conviction. To be sure, this is not the same as taking notes, but it illustrates the philosophy that it is the court's responsibility to determine the impact [unfortunately called the court's discretion].

Federal decisions indicate the presiding judge can hang his hat on the dubious peg known as "discretion". Goodloe v. United States, 88 U.S.App.D.C. 102,

5. In the Federal Digest and Southeastern Reporter Digest.

6. State v. Sharpe, 239 S.C. 258, 122 S.E. 2d 622.

188 F.2d 621, cert. den. 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619 (CCA D.C.1951); Harris v. United States, 261 F.2d 792 (CCA 9, 1959), cert. den. 360 U.S. 933, 79 S.Ct. 1446, 3 L.Ed.2d 1546; United States v. Chiarella, 2 Cir., 184 F. 2d 903, modified 2 Cir., 187 F.2d 12; United States v. Campbell, (D.C.Iowa 1956) 138 F.Supp. 344.

 The better rule is that the trial judge shall determine whether, in light of the nature of the case, the length of the trial, the possibility of the juror losing the notes, and other circumstances surrounding the trial, civil or criminal, a party is thereby denied a fair and impartial trial. If so, the note taking should be stopped. If not, no harm is foreseen.[7]

 Plaintiff has shown neither prejudice nor partiality. As to Grounds 11 of his motion, the same is denied.

## GROUNDS 12

THE COURT ERRED IN REFUSING THE INTRODUCTION OF A STATEMENT OF ONE HOWARD GEORGE ON BEHALF OF THE PLAINTIFF.

During the trial plaintiff sought to introduce the statement of one Howard George. This statement was taken April 3, 1968, and was witnessed by plaintiff's counsel. It stated:

My name is Howard George. My wife's name is Beatrice George. We live at 4500 Phillips Highway South. I own the Joletti Italian Restaurant in the Floridian Hotel in Jacksonville, Fla.

On April 12, 1967, I was the general manager for the Squirrel Inn Corporation.

I recall the incident involving Mr. and Mrs. Terry Carson which occurred on April 12, 1967. I first found out about the accident from Mrs. Terry Carson who came down to the front desk and told me that Mr. Carson had fallen out of bed. This was early the morning of April 12. I immediately called Dr. Way and he came very promptly. I later heard from other people that they had heard the sound of Mr. Carson falling out of bed.

There was a heavy plywood board between the box-springs and mattress. This had not been requested by Mr. and Mrs. Carson but was placed under the bed at the request of another guest and it had not been taken out.

A similar incident had happened to a previous couple. I don't remember their name or exactly when this happened but they had laughed about it and said the bed tettered, so they pulled the mattress off and slept on the floor.

Mrs. Carson later told me about hurting on the worn steps coming downstairs but I don't know anything about this.

I have read the above and it is true to the best of my knowledge and belief and have been given a copy this 3rd day of April.

Witness:

/s/ John R. Etheridge, Jr.
/s/ William B. Mozingo, Sr.
/s/ Howard L. George
April 3/68

Counsel for plaintiff made no effort to take the deposition of Mr. George, or to

---

**7.** If the irregularity complained of is shown to have been trivial or slight and not proved to have influenced, or to have been of such character that it would be reasonable to presume that it might influence the jury in any respect, such is not to be considered as a sufficient departure from procedural regularity to be ground for a new trial. Moore's Federal Practice, 1966 Ed., Vol. 6A, p. 3798, New Trials 5908 (4) citing United States v. Compagna (2nd Cir. 1944) 146 F.2d 524, 528.

subpoena him.[8] Plaintiff had hired Ellis I. Kahn, Esquire, of the Charleston bar, to try to locate Mr. George, and Kahn testified he made strenuous effort to locate George as a witness, without success.

As may be seen, plaintiff's hopes centered on the statement:

A similar incident had happened on a previous occasion. I don't remember their name or exactly when it happened.

The theory of plaintiff is, of course, that this proves that the landlord had notice of an inherently dangerous condition. Counsel for defendant vigorously objected on the ground George was not a party to the action; further, that there was a failure of identity of room, bed, circumstances and surroundings. In addition, defendant insisted that to allow the statement without right to cross examine flagrantly violated the hearsay rule.

Generally, Rule 43(a), Federal Rules of Civil Procedure [9], regulates the admissibility of evidence in civil cases. It permits the admission if the evidence falls into any one of three categories:

(1) If the statutes of the United States so provide;

(2) Under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity.

(3) If the evidence is admissible under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States Court is held.

This court is concerned with the last. Would South Carolina permit the introduction of the statement of Mr. George?

The answer is negative. The statement in question was an out of court declaration attempted to be introduced to prove the truth of the matters asserted therein. It was clearly hearsay.

■ If admissible the statement would come in under an exception to the hearsay rule, as a declaration against interest. Declarations against interest are to be distinguished from admissions against interest made by a party opponent. The declaration against interest is made by a third person, a stranger to the law suit, against his interest and is introduced against one of the parties to the controversy. There are two requirements for an out-of-court statement to be admissible as a declaration against interest. First, the out-of-court declarant must be unavailable as a witness, and second, the statement must have been against the declarant's proprietary, pecuniary, or penal interest. "The first requirement establishes special trustworthiness, the second special need." A Guide to Evidence Law in South Carolina, by James F. Dreher, South Carolina Bar Assn., 1967.

An example of a declaration against pecuniary interests would be an acknowledgement that the declarant was indebted to another or that nothing was due him upon a particular account. 31A C.J.S. Evidence § 219(b), p. 609. If Mr. George's statement is admissible under

---

8. Note Mr. George's address at Jacksonville, Florida, which is more than 100 miles from Charleston, S. C.

9. Fed.R.Civ.P. 43(a) provides: Evidence. Form and Admissibility.

In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

the rule it must be a declaration against his pecuniary interest in that it acknowledges negligence which would subject the declarant to a civil suit. American cases are split upon the question of whether a statement which would give rise to tort liability is a declaration against one's pecuniary interest. 31A C.J.S. Evidence § 219(c), pp. 608, 609. There are no South Carolina cases in point. A Guide to Evidence Law in South Carolina, supra. It seems clear that an admission of tort liability is considered a weaker and more indirect ground than an acknowledgement of a debt, when the declaration is against one's supposed pecuniary interest.

There are, however, several South Carolina cases which involve an admission by the third party declarant's against his penal interest and the declaration was offered as evidence in a civil action. The hearsay objections and tests for reliability of the declaration are similar whether the declaration be against one's penal interest or against one's pecuniary interest. This court is therefore guided by the South Carolina cases involving a declaration against penal interest. The latest and most comprehensive of the South Carolina cases is McClain v. Anderson Free Press, 232 S.C. 448, 102 S.E.2d 750 (1950). Three of the justices in that case were in favor of admitting in a civil suit a declaration against penal interest under proper circumstances.

However, such hearsay statements must be carefully scrutinized to avoid the injustices inherent in ordinary hearsay. The hallmark of the exception of course is the special reliability and guaranty of trustworthiness of a statement which militates against declarant's interest. It is assumed that since the statement is in derogation of the declarant's interest, that this raises an inference of truth which justifies denial of the adversary's substantial right to cross-examine and compensates for the fact that the declarant is not under oath and not present so that his demeanor can be observed. The statement offered here does not possess that hallmark of reliability. The point was articulately made by Justice Oxner in his opinion, concurred in by Justice Stukes, in McClain v. Anderson Free Press, supra:

It is essential that we keep in mind the ground for this exception to the hearsay rule. It is based upon the principle of experience that a statement asserting a fact distinctly against one's interests is entirely unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently guaranteed, though oath and cross-examination are wanting. It is upon the assumption that no man will speak falsely to his own hurt and will not make a declaration against his interest unless truth compels it. Therefore, to be admissible, there should be a circumstantial guarantee of the trustworthiness of the declaration.

The declarations offered in evidence were statements alleged to have been made by Frank Martin to relatives and friends. It is not reasonable to suppose that he thereby intended to expose himself to prosecution, or that he made these statements under any belief that he should do so. Instead of being in the nature of a confession, they were merely loose statements heedlessly made by a braggadocio.

In the case at bar, Mr. George made his statement to plaintiff's attorney. It is unreasonable to suppose that he believed through this statement he would subject himself to tort liability. "The interest of declarant must have been so obvious and direct as presumably to have been present in his mind at the time of the declaration. Accordingly a declaration which would be against interest only in certain remote or improbable contingencies is not competent." 31A C.J.S. Evidence § 219, p. 609. See also Filesi v. United States, 352 F.2d 339 (4th Cir. 1965), "It is implicit in the exception that for the declaration to be trustworthy the declarant must have known it was against his interest at the time he made the statement." The state-

ment in question here loses its credibility under the guidelines set down for admission of such statements in C.J.S. and by Justice Oxner, the reason being that statements militated against no real interest of the declarant. It is obvious that, at the time of making the statement George was no longer in the employ of Squirrel Inn. There is no evidence his pecuniary penal, or other interest could possibly be jeopardized.

Upon this review the court is of the opinion the evidence should have been excluded, so that this ground of the motion is insufficient to warrant the granting of a new trial.

## GROUNDS 13

THE COURT ERRED IN REFUSING THE INTRODUCTION INTO EVIDENCE OF A PHOTOGRAPH OF ONE CERTAIN BED BOARD ON BEHALF OF THE PLAINTIFF.

Plaintiff sought to introduce some photographs of the alleged bed board, which photographs plaintiff's counsel stated were taken at Squirrel Inn. Defendant objected on the grounds that there was no formality of proof. It is true that there was no showing that the photograph was an exposure of the film to the bed board which was under the mattress that Mr. Carson slept on. There was no showing of a similarity to the one involved, nor was there identification of the bed or beds of being the same. Upon consideration, the court sustained the objection for lack of formality of proof, commonly classified as authentication

The general rule is set forth in 29 Am. Jur.2d p. 861, Evidence § 788:

The established rule in both civil and criminal cases, is that a photograph is admissible in evidence only if it is authenticated or verified by some other evidence to establish that the photograph is a substantially true, accurate, and faithful representation or portrayal of the place, person, or subject it purports to represent or portray. The testimony of a witness or of witnesses is required to authenti-

cate or verify a photograph, because a photograph, of itself and without testimonial sponsorship, proves nothing. There must be testimony as to who or what the photograph shows; in other words, the persons, places, or things shown in the photograph must be 'identified'.

It can readily be seen that plaintiff did not meet the requisites of authentication.

This rule was adopted, by indirection, in Colley v. Standard Oil Co., 157 F.2d 1007 (4th Cir. 1946). It seems at first blush that the Fourth Circuit had departed from the authentication rule but it contends itself by saying that the rule applied as to authentication and formality of proof, but that the trial judge was arbitrary in ruling that the photograph was not sufficiently inclusive to be admissible. Of the same impact is Willis v. Pennsylvania R.R. Co., 269 F.2d 549 (4th Cir. 1959). See also Witt v. Merrill, 210 F.2d 132 (4th Cir. 1954).

 In the absence of any proof that the photographs represented a true and correct film exposure to the bed board in question, or one identical in size and makeup, the testimony was properly excluded. There was no witness offered to say that he or she recognized the object depicted or to testify that the photograph clearly and fairly represented it. Kleveland v. United States, 345 F.2d 134 (2nd Cir. 1965). Kortz v. Guardian Life Ins. Co., 144 F.2d 676 (10th Cir. 1944) cert. den. 65 S.Ct. 63, 323 U.S. 728, 89 L.Ed. 584. Giffin v. Ensign, 234 F.2d 307 (3rd Cir. 1956).

This court finds no cause to grant a new trial in error of excluding photograph(s) in question.

Having considered all of the grounds presented by plaintiff, with special attention to those upon which plaintiff heavily relied at the hearing before the court, the motion for a new trial is refused. The motion for a judgment notwithstanding the verdict has been earlier refused herein.

And it is so ordered.